WING and wife, Plaintiffs and Respondents, vs. DEPPE and another, Defendants: STROHN and another, Defendants and Appellants.

*April 5—May 3, 1955.*

For the appellants there were briefs by *Mistele & Smith* of Jefferson, and oral argument by *Richard C. Smith*.

For the respondents there was a brief by *Dakin & Dierker* of Watertown, and oral argument by *Roland F. Dierker*.

MARTIN, J. Bernard Wing, father of the deceased, was a scrap-metal dealer in Waterloo. He had been in that business for many years. He and his wife had five children; Ronald was the oldest. Ordinarily the salvage business can be operated in this part of the country about nine months of the year. Prior to 1952, with the possible exception of 1948, Bernard Wing's net annual income was about $2,500. From 1948 through 1952 he requested and received public assistance during the winter months.

From the time that Ronald was about nine years old, Bernard Wing often took the boy with him on his routes and taught him the varieties of metal, so that by the age of twelve years Ronald was able to and did help sort metals for his father.

In February, 1952, Ronald quit high school to help his father. In October Bernard Wing was injured and the operation of his business was suspended for some months. Ronald then engaged in odd jobs, setting pins in a bowling alley, assisting on a rural milk route, and in rubbish collection. He kept his earnings from such work and provided his own clothes, occasionally purchased clothes and entertainment for the other children in the family, and sometimes gave money to his father when he needed it. The evidence shows that the boy was close to his family, helped his mother in the home, looked after his brothers and sisters and had a good influence on them. He was an obedient and responsible young man.

In 1951 Bernard Wing made $2,500 operating his business without the boy's help, and $3,500 in 1952 when Ronald helped him. In 1953, after the boy's death, the business earnings were $3,700, although scrap prices had fallen to 50 per cent of their 1952 value and Bernard Wing was unable to collect heavy scrap because of his health. Appellants argue that if the son's contribution to the business had been material it would have shown a financial loss in 1953.

Bernard Wing testified that if Ronald had been helping him in 1953 and prices were at the 1952 level, he would have made $8,000 that year. Before Ronald was killed his father had planned to get a truck for him to use in going out on the routes. He testified that while the boy helped him in 1952 he was able to pay off on three trucks, a car, and a motorcycle, and that his investment in the trucks was about $1,400. It was also his testimony that in Milwaukee, where he had previously operated his business, a man with Ronald's knowledge of metals would earn $120 a week. Marvin Wing, uncle of the deceased, who had been in the junk business in Milwaukee, stated that junk yards in Milwaukee paid $1.50 to $1.75 an hour, though he did not know whether that wage was for metal sorting. He further testified that the reason he could not stay in the business was that he did not know metals.

In our opinion the evidence in the record supports the jury's findings. Sutherland in his work on Damages, vol. 5 (4th ed.), p. 4911, sec 1268, states:

"The evidence of pecuniary injury need not be very strong in order that the case may go to the jury except as to damages made up of actual disbursements; . . . A reasonable probability of pecuniary benefit is all that is required."

Ronald Wing was a strong, healthy boy of seventeen and one-half years. From childhood he had helped his father and acquired the particular knowledge and skill of metal sorting.

Although he was a good student, he quit high school because his father needed him in the business. While it is true that the father earned more in 1953 than in 1952, there is evidence from which the jury could well conclude that the business would have produced much more in 1953 had Ronald lived to continue helping his father. Moreover, the jury could have inferred from the evidence that had it not been for the father's injury which caused suspension of his operations in October of 1952, the business earnings in that year would have exceeded those of 1953. Bernard Wing had carried on his operations in Waterloo for only four years before Ronald's death. There is evidence that such a business depends on establishing contacts with farmers and commercial businesses whose waste products are scrap metal. These were all facts which the jury could consider, and it is a fair inference that the contacts which Bernard Wing had been developing during his operations in and around Waterloo accounted for the growth of his business, even without the son's assistance. Under such circumstances it would also be reasonable to conclude that had Ronald been alive in 1953 to help him in collecting the heavy scrap which Bernard could not handle alone, or perhaps to operate a route of his own, the business would have netted much more than it did.

Since the evidence was such that different inferences could be drawn therefrom, it was for the jury to decide what inferences were proper under all the circumstances. We have often held that damages of this nature, unless obviously the result of passion and prejudice, are peculiarly within the province of the jury. *Swanson v. State Farm Mut. Automobile Ins. Co.* (1953), 264 Wis. 274, 58 N. W. (2d) 664; *Boyle v. Larzelere* (1944), 245 Wis. 152, 13 N. W. (2d) 528; *Schrier v. Milwaukee, Lake Shore & Western R. Co.* (1886), 65 Wis. 457, 27 N. W. 167. Even though the amount awarded may appear generous, the fact that the jury declined to award anything as pecuniary loss of the boy's

contributions after he would have reached his majority, though such a finding would have been warranted under the evidence, clearly shows a lack of passion and prejudice.

Appellants rely on *Costello v. Schult* (1953), 265 Wis. 243, 61 N. W. (2d) 296, where we held that the trial court properly reduced a jury award of $5,000 to $1,000 for pecuniary loss to a mother as a result of her daughter's death. There the eighteen-year-old daughter had been employed for several months prior to her death at a monthly salary of about $150. The evidence showed that she contributed very little to her mother during those months and there was in the record nothing to suggest that she would have contributed more in the future. The situation in this case is quite different. Here Ronald's contributions were in the nature of his services. The father had trained him over the years and there is evidence that his assistance in the business after he left high school was substantial. His relationship to the family generally was such that plaintiffs could expect him to continue those contributions at least until he was twenty-one. If the jury chose to accept the evidence that the services of a man of his special ability were worth $1.50 to $1.75 an hour, its award of $7.500 for the loss of such services for three and one-half years cannot be considered excessive.

*By the Court.*—Judgment affirmed.

BROADFOOT, J., dissents.