MERTENS, Plaintiff and Respondent, v. LUNDQUIST and another, Defendants and Appellants: GENERAL CASUALTY COMPANY OF WISCONSIN, Impleaded Defendant and Respondent.

*January 10—February 6, 1962.*

For the appellants there was a brief by *O'Leary, Joyce & Goggin,* and oral argument by *Morris S. Warzinik,* all of Neenah.

For the respondent Charles C. Mertens, individually and as special administrator, there was a brief and oral argument by *John E. Esler* of Kaukauna.

For the respondent General Casualty Company of Wisconsin there was a brief by *Benton, Bosser, Fulton, Menn & Nehs* of Appleton, and oral argument by *David L. Fulton.*

CURRIE, J. No issue of liability is raised on this appeal. The questions presented are whether two items of damages are excessive, and whether plaintiff's counsel made an improper argument to the jury which had a prejudicial effect upon the jury's determination of damages. The questioned items of damages are the $5,000 for pecuniary loss sustained by plaintiff as the result of the death of his wife and the $3,000 awarded for loss of her society and companionship.

*Pecuniary Loss.*

Both Mertens and his wife were seventy-four years of age at the time of Mrs. Mertens' death. The life expectancy of each as of that date was 6.68 years according to the American Experience Table of Mortality set forth in sec. 314.07, Stats. Before the accident, Mrs. Mertens performed all of the housework in the Mertens home, including, among other things, cleaning the floors, and doing the dishwashing and laundry for her husband and herself.

Mertens' injuries from the accident disabled him for some time thereafter in the performance of housework in and about his home. During this period a daughter-in-law was employed to come in and take care of housecleaning, laundry, and cooking his meals. For these services she was to be paid $15 per week. This is the only direct testimony in the record concerning the actual monetary loss sustained by Mertens as the result of his wife's death.

On the basis of the $15 per week agreed to be paid the daughter-in-law, the housekeeping services performed by the deceased wife would amount to $780 per year, and, extended over a period of 6.68 years, would aggregate $5,210.40. Appellants contend that from this amount there should be deducted the amount it would have cost Mertens to support, maintain, and provide medical care for his wife during those years, if she had lived. Furthermore, as pointed out in *Rogers v. Lurye Furniture Co.* (1927), 193 Wis. 496, 502, 211 N. W. 782, 215 N. W. 457, and *Rudiger v. Chicago, St. P., M. & O. R. Co.* (1898), 101 Wis. 292, 303, 77 N. W. 169, the capacity of an elderly person to work decreases as he or she advances in years. Still another factor to be considered is that the present value of $5,210.40 discounted at a three or four per cent rate of interest over a period of 6.68 years would be considerably less than $5,000.

Therefore, if we start out with the assumption that $15 per week is the maximum the jury could place upon the value of the services rendered by Mrs. Mertens to her husband over a period of 6.68 years, and then reduce the result because of the aforementioned factors, the $5,000 pecuniary loss found by the jury is excessive. However, we do not deem that evidence establishing the pecuniary loss in a wrongful-death case has to meet such exacting requirements. In the case of *Wing v. Deppe* (1955), 269 Wis. 633, 70 N. W. (2d) 6, the contention was advanced that the damages for pecuniary loss, which were awarded to parents for the wrongful death of their minor son, were excessive. This court, in upholding such award, quoted with approval from 5 Sutherland, Damages (4th ed.), p. 4911, sec. 1268, as follows: "The evidence of pecuniary injury need not be very strong in order that the case may go to the jury except as to damages made up of actual disbursements; . . . A reasonable probability of pecuniary benefit is all that is required."

See also *Warrichaiet v. Standard Oil Co.* (1934), 213 Wis. 619, 252 N. W. 187.

We believe that the average jury knows from their own experience the approximate wages which would have to be paid to obtain a full-time housekeeper who would come into a home in their community and perform the services that Mrs. Mertens had been performing for her husband. We are satisfied that even taking into account the aforementioned factors in computing the husband's actual pecuniary loss, a jury in the instant case could reasonably determine the same to have a present value of $5,000. Therefore, we sustain the jury's determination of plaintiff's pecuniary loss.

### *Loss of Society and Companionship.*

We consider that appellants' argument, as to why they deem excessive the $3,000 award for loss of society and companionship, can best be set forth by quoting this extract from their brief:

"The record reveals that during the trial there was not the weakest attempt to show the kind of relationship between Mr. and Mrs. Mertens, or the love, or affection, or the conduct of each toward the other, nor the society and companionship that may or may not have been afforded to the respondent-husband, nor the personality, disposition, and character of the deceased wife, nor the disposition and susceptibility of the respondent to suffer such loss. The only facts which the jury had to base its award were the following: (1) Mr. Mertens helped his wife 'wash dishes and stuff, just to pass the time;' (2) Mr. Mertens occupied his time 'monkeying' in the shop located in his garage; (3) Mr. Mertens kept tools and equipment in the shop; (4) he spent 'a lot of time there;' (5) Mrs. Mertens used to say to her husband, 'Can't you stay in the house?' His reply, by his own testimony, was 'I would rather be in the shop, where I can spit on the floor.' It is respectfully submitted that this

meager evidence cannot support an award for loss of society and companionship by even the most-liberal interpretation."

In addition to the testimony above summarized by appellants, the record discloses that three adult sons of Mr. and Mrs. Mertens testified, thus indicating that the Mertens were married a substantial number of years. Furthermore, the jury had an opportunity to observe Mr. Mertens when he testified. The jury might well have concluded that his testimony about preferring to stay in his shop was said partly in jest. Certainly, the jury was not required to draw the inference that there was any estrangement between this aged man and his wife.

We deem that the amount to be awarded for loss of society and companionship lies peculiarly within the discretion of the jury. *Steffes v. Farmers Mut. Automobile Ins. Co.* (1959), 7 Wis. (2d) 321, 334, 96 N. W. (2d) 501. Indeed, a most-unusual fact situation would have to be present to warrant a court in disturbing a jury's award for loss of society and companionship. We conclude the facts of the instant case fall far short of such a category.

### *Improper Argument of Counsel.*

In his argument to the jury, plaintiff's counsel stated that Mertens did not have any money with which to pay his bills. Counsel followed this statement with the comment: "Poverty is not a disgrace in this country." Prompt objection by appellants' counsel was sustained, and the trial court instructed the jury to disregard these statements.

These remarks constituted improper argument by plaintiff's counsel. Stressing the financial worth of one of the parties in argument to the jury is an appeal to passion and prejudice and is not to be condoned. However, under the facts of the instant case we accept the determination of the

learned trial judge, on motions after verdict, that the error committed was not so prejudicial as to require a new trial. This is because it had been brought out in the testimony that Mertens was without funds to pay the funeral bill and the $15 per week to his daughter-in-law. From this testimony the jury could well have inferred that Mertens was a poor man. Thus, plaintiff's improper argument injected nothing new. In such a situation, we deem the trial court's instruction to the jury to disregard the improper argument may well have cured the error.

*By the Court.*—Judgment affirmed.