Jeanette HELMBRECHT,
Plaintiff-Appellant-Cross-Petitioner,

v.

ST. PAUL INSURANCE COMPANY and Raymond Colwin,
Defendants-Respondents-Petitioners.

Supreme Court

*No. 82–1894.    Argued October 29, 1984.—
Decided January 31, 1985.*

(Also reported in 362 N.W.2d 118.)

For the defendants-respondents-petitioners there was a brief by *John R. Teetaert* and *Menn, Nelson, Sharratt, Teetaert & Beisenstein, Ltd.,* Appleton, and oral argument by *John R. Teetaert.*

For the plaintiff-appellant-cross-petitioner there were briefs by *John H. Correll* and *Correll Law Office, Ltd.,* Milwaukee, and oral argument by *Mr. Correll.*

LOUIS J. CECI, J.   This is a review of a decision of the court of appeals[1] reversing the judgment of the circuit court for Fond du Lac county, William E. Crane, presiding judge, and remanding the case for a new trial.

---

[1] *Helmbrecht v. St. Paul Ins. Co.,* 117 Wis. 2d 74, 343 N.W.2d 132 (Ct. App. 1983).

We affirm the court of appeals' holding that the trial court erred in granting the petitioners' motion to dismiss the action and direct a verdict in their favor. We reverse that portion of the court of appeals decision remanding the matter for a new trial on all issues.

This is a legal malpractice action which arose out of Attorney Colwin's representation of Jeanette Helmbrecht in a 1977 divorce action. At the time of the divorce, Jeanette Helmbrecht had been married to Thomas Helmbrecht for nearly twenty-four years, and they had six living children. Mrs. Helmbrecht, forty-nine years old at that time, was a registered nurse but, except for a few months in 1971, had not worked since their marriage in 1953. Thomas Helmbrecht, fifty years of age at that time, was a dentist by profession and was in partnership with his brother in Mayville, Wisconsin. By means of his dental practice, Dr. Helmbrecht grossed approximately $112,000 per year, netting him over $62,000 per year before taxes.

A summons was filed by Mrs. Helmbrecht in September, 1976, but was not followed by a complaint. It is clear that she wanted a legal separation but was opposed to a divorce. Subsequently, in March, 1977, Attorney Colwin was retained by Mrs. Helmbrecht, and Dr. Helmbrecht filed a counterclaim, asking for a divorce.

Prior to the scheduled divorce trial date, Colwin met with Jeannette Helmbrecht to discuss what items were to be included in the marital estate and the possibility of a maintenance award for Mrs. Helmbrecht. Jeanette testified that she met with Colwin on four occasions, and Colwin testified that they met on thirteen occasions. Prior to trial, Jeanette expressed a desire to enroll in a refresher course so that she could return to work as a registered nurse.

Mr. Storck, the attorney for Dr. Helmbrecht, submitted to Colwin a proposed stipulation agreement, which in-

cluded the following assets: 1976 Buick automobile, 1976 International Scout, the marital residence, furniture, Airstream trailer, four life insurance policies, retirement fund, Clifford trust, and a remainder interest in the Helmbrecht trust. In an attempt to further ascertain the extent and valuation of the marital estate, Colwin deposed Dr. Helmbrecht, visited Dr. Helmbrecht's dental office, examined probate records with respect to a remainder interest in the Helmbrecht trust, and obtained Dr. Helmbrecht's tax forms.

The divorce trial was scheduled for August 23, 1977, the major issues being property division and maintenance to be awarded Mrs. Helmbrecht. Colwin appeared with his client, Jeanette Helmbrecht, but had no other witnesses scheduled to testify regarding the value of the marital assets or Mrs. Helmbrecht's need for maintenance. After Dr. Helmbrecht's attorney stated that he was ready to proceed with the trial, Colwin requested a recess. The two attorneys then negotiated a stipulation whereunder Mrs. Helmbrecht was to receive a $25,000 cash award as property division to be paid following the sale of their home, limited alimony payments of $1,000 per month for forty-two months, custody of their two minor children, $200 per month per child in child support, the 1976 Buick, some items of furniture, and an insurance policy on her life. The balance of the marital estate, including the remaining proceeds from the sale of the house, the 1976 Scout, furniture, three life insurance policies on the life of Dr. Helmbrecht, Airstream trailer, retirement fund, Clifford trust, and remainder interest in the Helmbrecht trust were all awarded to Dr. Helmbrecht. No mention was made of Dr. Helmbrecht's interest in his dental practice.

The stipulation was read into the record and approved by Joseph E. Schultz, county judge for Dodge county. When asked if she agreed with the stipulation, Mrs.

Helmbrecht answered, "Basically it's the same as what we discussed before, right. Yes, I do, your honor." Jeanette Helmbrecht, in the instant action, testified that Colwin told her that Judge Schultz had insisted on a fifty percent split of the marital estate and that the stipulation was a fifty percent split. The divorce was subsequently granted by Judge Schultz.

Following the divorce, Mrs. Helmbrecht moved to Bedford, New Hampshire, to live with her brother. The two minor children had previously moved there and were already attending school. Jeanette did take a course to refresh her skills as a registered nurse but, because of a back injury and her outdated skills, job opportunities as a registered nurse did not materialize. At the time of the malpractice trial, she was working nights at Cedar Lake Home Campus in West Bend, Wisconsin.

Within a year of the divorce, Mrs. Helmbrecht realized that she and her children could not live on the maintenance award and child support she was receiving. She contacted Colwin concerning the possibility of an increase in child support, but was told by Colwin's associate that an increase was unreasonable. After her maintenance payments expired in 1981, Mrs. Helmbrecht returned to Wisconsin and attempted to get an adjustment on the divorce judgment. When all attempts failed, she commenced this legal malpractice action against Attorney Colwin and his insurer, seeking to recover as damages the difference between what she actually received in the divorce proceedings and what she would have received if her case had been competently and reasonably prepared and presented.

A trial to a jury of twelve was held on July 27–30, 1982, Judge William E. Crane, presiding. Mrs. Helmbrecht, the plaintiff therein, relied primarily on the testimony of a certified public accountant and three attorneys admitted to practice law in Wisconsin. They testi-

fied largely with respect to specific acts of negligence on the part of Colwin and the valuation of the marital estate in 1977. At the close of the plaintiff's case, the defendants made a motion to dismiss the case, asserting that there was no evidence regarding the issue of damages that could go to the jury. The defendants argued that Judge Schultz approved the stipulation and that there was no evidence to indicate that he would have ruled differently if the case had gone to trial. Judge Crane took the motion under advisement.

The defendants relied primarily on the testimony of Judge Schultz, the trial judge in the original divorce action, and one attorney admitted to practice law in Wisconsin. Judge Schultz testified as to what he would have done had the divorce case gone to trial. He concluded that Colwin had negotiated a fair settlement for his client and one which had been "hammered out" by "two fine craftsmen."

At the close of the parties' cases, the trial judge submitted both the negligence and damage questions to the jury. As to damages, the trial judge instructed the jury,

"In this case the pecuniary loss, if any, would be the difference between the value of the pecuniary benefits as awarded by the trial court based upon the stipulated agreement of the parties to the divorce action and the amount of pecuniary benefits that would have been awarded by the trial court except for the defendant's negligence.

"I caution you jurors that you are not to decide the divorce case. That is not the matter that is presented to you. You are not to decide the other issues as to the property division or the temporary alimony as your own decision. Your decision must be as to what the judge did based on the stipulation and what the judge would have done based on the information before him on August 23, 1977, at the time that the judgment in this case was entered based upon . . . the agreed stipulation of the parties."

The jury returned a verdict finding Colwin seventy-five percent causally negligent and Jeanette Helmbrecht twenty-five percent contributorily negligent. With one dissent, the jury set damages at $250,000.

Following motions after verdict, the trial judge, Judge Crane, granted the defendants' motion to dismiss and directed the verdict in favor of the defendants. He claimed that the jury's verdict shocked the conscience of the trial court in that it was not supported by sufficient evidence. The trial court reasoned that the verdict,

". . . totally disregarded the Court's instructions, totally disregarded the jury's duty, and the damage award as found by them is perverse and extremely prejudicial. . . ."

The court's finding was based largely on the fact that the jury's decision conflicted with the testimony of a single witness, the trial judge in the divorce action. The jury had been instructed to determine what the particular judge in the original divorce action would have awarded the plaintiff had her case been properly presented at trial. However, damages were set by the jury at $250,000, even though at the legal malpractice trial Judge Schultz gave little or no indication that he would have awarded anything more than the plaintiff received from the stipulation.

The issues presented on appeal are:

1. Whether the standard used in determining damages in a legal malpractice case is subjective (what a particular judge would have awarded) or objective (what a reasonable judge would have awarded).

2. Whether the trial judge erred in dismissing the action and directing the verdict in favor of the defendants.

3. Whether the court of appeals erred in remanding the case for a new trial on all issues.

4. Whether the trial court erred in allowing the jury to decide the issue of causation and damages.

## I.

The elements of a legal malpractice case in Wisconsin were set out in *Lewandowski v. Continental Casualty Co.,* 88 Wis. 2d 271, 277, 276 N.W.2d 284 (1979), as follows:

" 'In an action against an attorney for negligence or violation of duty, the client has the burden of proving the existence of the relation of attorney and client, the acts constituting the alleged negligence, that the negligence was the proximate cause of the injury, and the fact and extent of the injury alleged. The last element mentioned often involves the burden of showing that, but for the negligence of the attorney, the client would have been successful in the prosecution or defense of an action.' " 7 Am. Jur. 2d, *Attorneys at Law,* sec. 188, at 156 (1963).

The plaintiff in *Lewandowski* was injured as a result of an automobile accident involving a police officer of the city of Ashland. The plaintiff's attorney failed to file a summons and complaint within the statute of limitations period, thus barring any legal action against the city. In the plaintiff's legal malpractice action against his attorney, the sole issues were those of causation and damages. In order to resolve these issues, the trial court proceeded with a trial of the negligence action as between the drivers of the two vehicles. The trial court determined that the measure of damages in the legal malpractice action would be the damages that would have been awarded to the plaintiff in an action against the police officer. This process has been described as a "suit within a suit."

On appeal, the trial court's procedure in *Lewandowski* was upheld by this court. As a general rule, we stated,

" 'In a malpractice action charging that an attorney's negligence in prosecuting a suit resulted in the loss of the client's claim, it has been recognized that the value of the lost claim, that is, the amount that would have been recovered by the client except for the attorney's

negligence, is a proper element of damages.' " *Lewandowski,* 88 Wis. 2d at 277–78, quoting 7 Am. Jur. 2d, *Attorneys at Law,* sec. 190 at 157 (1963). (Footnote omitted.)

We held,

"Regardless of the approach used to resolve the issue of liability and damages in a legal malpractice case the ultimate goal should be to determine what the outcome *should* have been if the issue had been properly presented in the first instance." *Lewandowski,* 88 Wis. 2d at 281. (Emphasis in original.)

In order for Mrs. Helmbrecht to prove causation and damages, she must prove what she should have received in the 1977 divorce action if her case had been properly presented. It is clear from the record that all of the pertinent facts were not available for Judge Schultz. Unlike the plaintiff in *Lewandowski,* Mrs. Helmbrecht does not allege total loss of her claim, but, rather, that she did not receive the full monetary award to which she was entitled, or what she would have received had she been competently represented in the divorce case.

Of primary importance in determining whether Colwin caused any injury to Jeanette Helmbrecht is the issue of whether a subjective or objective standard should be used in calculating damages. Specifically, the issue is whether the monetary award actually received by Mrs. Helmbrecht should be compared with what Judge Schultz, the particular judge in the original divorce action, would have awarded had all of the facts been properly presented to him, or with what a "reasonable judge," knowing all the facts, would have awarded in 1977.[2]

[2] The powers and obligations of a trial judge in a divorce action are set forth in ch. 767, Stats. *Cf., Miner v. Miner,* 10 Wis. 2d 438, 103 N.W.2d 4 (1960), involving a divorce stipulation, where we held, "The court has the same serious duty to examine care-

This issue is of major significance in this case because not only did Judge Schultz testify at trial concerning what he would have awarded, but also the jury was specifically instructed to use a subjective standard and, when it became apparent that the jury disregarded the instruction, the trial judge dismissed the action.

We agree with the court of appeals' holding, which states,

"The trial court incorrectly concluded that Jeanette was not damaged because the divorce judge testified that even in light of the additional evidence, he would not have awarded Jeanette anything more. The jury did not have to decide what the divorce judge in this case would have done; it had to decide what a reasonable judge would have done had Colwin made a proper presentation of Jeanette's case. See, Chocktoot v. Smith, 571 P.2d 1255, 1257 (Or. 1977). Malpractice is negligence, and negligence is determined objectively." *Helmbrecht*, 117 Wis. 2d at 77.

In addition to the argument that negligence law concerns itself with that which can be objectively proven, there are also practical concerns which help to explain why the better rule regarding the measurement of damages is the use of the objective standard. We are deeply concerned about the role of the original judge in subsequent legal malpractice actions, and we will not adopt a rule which compels a trial judge to testify as a witness for one of the parties. That would necessarily place the judge in a peculiar situation where his position of neutrality would be unavoidably compromised, and he would be forced to defend his own actions in the original

fully such agreements or stipulations against the background of *full information of the economic status and resources of the parties* as it has in making a determination without the aid of such an agreement." *Id.*, 10 Wis. 2d at 443. (Emphasis added.) *See also, Leighton v. Leighton*, 81 Wis. 2d 620, 261 N.W.2d 457 (1978).

suit. Also, the risk of prejudice is great. The court of appeals stated,

"Additionally, although the jury obviously disregarded the testimony of the divorce judge in this case, there was the danger that the jury would give his testimony undue weight. Section 904.03, Stats., may therefore require that he not be allowed to testify." *Helmbrecht,* 117 Wis. 2d at 77.

If we would require a subjective standard to be used in legal malpractice actions, serious problems would arise for the plaintiff if the original fact finder is unavailable or if his testimony is excluded in the malpractice action because it is found to be prejudicial.

The same concern was expressed by the California Court of Appeals. After stating that a judge should avoid not only impropriety, but also the appearance of impropriety, the court declared,

"We think it prejudicial to one party for a judge to testify as an expert witness on behalf of the other party with respect to matters that took place before him in his judicial capacity. In such instance the judge appears to be throwing the weight of his position and authority behind one of two opposing litigants. The Evidence Code absolutely prohibits the judge presiding at the trial of an action to testify as a witness over the objection of a party. (Evid. Code, § 703; *People v. Connors,* 77 Cal. App. 438, 453, [246 P. 1072].) We think it only slightly less prejudicial when a judge expresses his opinion as a witness about events that occurred in an earlier trial over which he had presided." *Merritt v. Reserve Ins. Co.,* 34 Cal. App. 3d 858, 883, 110 Cal. Rptr. 511 (1973).[3]

Second, if evidence of what a particular trial judge would have awarded in the initial action is required to prove damages when the original action was before a trial judge, then evidence of what a particular jury

[3] *See also Aetna v. Price,* 206 Va. 749, 760, 146 S.E.2d 220 (1966).

would have awarded in the initial action would also be required to prove damages when the original action was before a jury. This would place an unreasonable and impossible burden on a plaintiff to bring forth twelve jurors to testify as to how they would have found the facts and awarded damages.

The role of the jury in a malpractice action was discussed by the Supreme Court of Oregon. The court decided that in a legal malpractice action, the trial judge should decide disputed issues of law, and the jury should decide disputed issues of fact.

"As already mentioned, even when the alleged negligence concerns the conduct of a jury trial, the 'causation' issue does not call for reconstructing the probable behavior of the actual jury in that trial. It does not call for bringing the jurors into court and subjecting them to examination and cross-examination to determine what they would have done if the case had been tried differently, nor does it call for expert testimony about the characteristics or the apparent attitudes of those jurors. Although the issue is stated to be the probable outcome of the first case, the second jury is permitted to decide this by substituting its own judgment for that of the factfinder in the earlier case. Once it is accepted that this is what the malpractice jury does, there is no reason why the jury (or a court when sitting without a jury) should not do the same even when the earlier factfinder was a judge, an administrative hearings officer, an arbitrator, a court-martial, or any tribunal deciding on factual grounds. However, no jury can reach its own judgment on the proper outcome of an earlier case that hinged on an issue of law. Unlike its decision of a disputed issue of the professional standard of care, the jury cannot decide a disputed issue of law on the testimony of lawyers." *Chocktoot v. Smith,* 280 Or. 567, 572–73, 571 P.2d 1255 (1977).

Finally, use of an objective standard in determining damages will further ensure uniformity in this state and avoid the troublesome prospect of a standard for dam-

ages that will shift with the vagaries of human ability and conduct.

For the above-stated reasons, we hold that the pecuniary damage to Jeanette Helmbrecht should have been calculated by comparing what she actually received from the stipulation with what a reasonable judge in 1977 would have awarded her had she been properly represented. The trial court erred in allowing Judge Schultz to testify as to what he would have awarded had the divorce action been tried before him and in excluding relevant evidence as to what a reasonable judge who was apprised of all of the facts would have awarded in 1977.

## II.

The issue we now address is whether the trial court erred in dismissing the action and directing the verdict in favor of the defendants. The defendants moved for a directed verdict at the close of the plaintiff's case and then renewed their motion following the return of the jury's verdict.[4] The motion was granted because the

---

[4] Section 805.14, Stats., provides in part as follows:

"(1) TEST OF SUFFICIENCY OF EVIDENCE. No motion challenging the sufficiency of the evidence as a matter of law to support a verdict, or an answer in a verdict, shall be granted unless the court is satisfied that, considering all credible evidence and reasonable inferences therefrom in the light most favorable to the party against whom the motion is made, there is no credible evidence to sustain a finding in favor of such party.

". . .

"(3) MOTION AT CLOSE OF PLAINTIFF'S EVIDENCE. At the close of plaintiff's evidence in trials to the jury, any defendant may move for dismissal on the ground of insufficiency of evidence. If the court determines that the defendant is entitled to dismissal, the court shall state with particularity on the record or in its order of dismissal the grounds upon which the dismissal was granted and shall render judgment against the plaintiff.

trial court believed that the evidence was not sufficient to support the verdict. The trial court was quite disturbed by the fact that the jury obviously ignored the court's instruction to establish damages based upon what Judge Schultz would have awarded.[5] The trial court was convinced that, given Judge Schultz's testimony, there was no credible evidence to establish pecuniary loss, and, therefore, proximate cause was also not established. Finally, the trial court was satisfied that the jury's determination of defendant's negligence was in error.

The standard to be used by a trial court in determining whether to grant a post-verdict motion for dismissal of the action because of insufficiency of evidence is well established. The statutorily established test that a trial court must use in reviewing the sufficiency of the evidence is set out in sec. 805.14(1), Stats., as follows:

"**805.14 Motions challenging sufficiency of evidence; motions after verdict.** (1) TEST OF SUFFICIENCY OF EVIDENCE. No motion challenging the sufficiency of the evidence as a matter of law to support a verdict, or an answer in a verdict, shall be granted unless the court is satisfied that, considering all credible evidence and reasonable inferences therefrom in the light most favorable to the party against whom the motion is made, there is no credible evidence to sustain a finding in favor of such party."

"This standard applies to both the trial court on a motion after verdict and to this court on appeal. *Page v.*

---

"...

"(5) MOTIONS AFTER VERDICT. ...

"(d) *Motion for directed verdict.* A party who has made a motion for directed verdict or dismissal on which the court has not ruled pending return of the verdict may renew the motion after verdict. In the event the motion is granted, the court may enter judgment in accordance with the motion."

[5] The effect of the jury's failure to follow the trial court's erroneous damage instruction is discussed in section III of this opinion.

*American Family Mut. Ins. Co.,* 42 Wis. 2d 671, 681, 168 N.W.2d 65 (1969)." *Chart v. General Motors Corp.,* 80 Wis. 2d 91, 110, 258 N.W.2d 680 (1977).

A great deal of credence is given to the jury's determinations. We have maintained,

"Even if the evidence adduced is undisputed, if that evidence permits different or conflicting inferences, a verdict should not be directed; and upon review after verdict, a court is obliged to accept the one adopted by the jury. . . . Thus, it is only in the most unusual case that a jury's verdict will be upset." *Millonig v. Bakken,* 112 Wis. 2d 445, 451, 334 N.W.2d 80 (1983). (Citations omitted.)

However, we have also declared that this court, "will not reverse a trial court's ruling on a motion for dismissal (nonsuit) unless such ruling is clearly wrong." *Olfe v. Gordon,* 93 Wis. 2d 173, 186, 286 N.W.2d 573 (1980). In *Olfe,* we quoted the following with approval from *Trogun v. Fruchtman,* 58 Wis. 2d 569, 207 N.W.2d 297 (1973):

" ' ". . . It is considered that these cases and perhaps others containing like language were all intended to express and do in fact express the same general idea, namely, that when the trial judge rules, either on motion for nonsuit, motion for a directed verdict, or motion to set aside the verdict, that there is or is not sufficient evidence upon a given question to take the case to the jury, the trial court has such superior advantages for judging of the weight of the testimony and its relevancy and effect that this court should not disturb the decision merely because, on a doubtful balancing of probabilities, the mind inclines slightly against the decision, but only when the mind is clearly convinced that the conclusion of the trial judge is wrong." ' *Trogun v. Fruchtman,* 58 Wis. 2d 569, 585, 207 N.W.2d 297 (1973), quoting, *Slam v. Lake Superior T. & T. Ry.,* 152 Wis. 426, 432, 140 N.W. 30 (1913)." *Olfe,* 93 Wis. 2d at 186.

A. *Liability*

In 1969, this court adopted our Code of Professional Responsibility,

". . . . as an inspirational guide to the members of the profession and as a basis for disciplinary action when the conduct of a lawyer falls below the required minimum standards stated in the disciplinary rules." SCR 20.002.

Although this code is beneficial in providing answers with respect to attorneys' ethical conduct, it does not exhaustively define the obligations an attorney owes his client, nor does it "undertake to define standards for civil liability of lawyers for professional conduct." *Id.*

This court first set forth the standard of care to be used by an attorney in *Malone v. Gerth,* 100 Wis. 166, 75 N.W. 972 (1898).

" '[A]n attorney must be held to undertake to use a reasonable degree of care and skill, and to possess to a reasonable extent the knowledge requisite to a proper performance of the duties of his profession, and, if injury results to the client as a proximate consequence of the lack of such knowledge or skill, or from the failure to exercise it, the client may recover damages to the extent of the injury sustained . . . .' " *Gerth,* 100 Wis. at 173, cited with approval in *Gustavson v. O'Brien,* 87 Wis. 2d 193, 199, 274 N.W.2d 627 (1979), and *Olfe,* 93 Wis. 2d at 180.

We have also held that an attorney is bound to exercise his best judgment in light of his education and experience, but is not held to a standard of perfection or infallibility of judgment. *Denzer v. Rouse,* 48 Wis. 2d 528, 534, 180 N.W.2d 521 (1970).

Attorney Colwin's liability for malpractice turns on the reasonableness of his skills, knowledge, and actions,

given the particular circumstances of the 1977 divorce action. This determination is a mixed question of fact and law, because the trier of fact is confronted with a dual problem—what, in fact, did Colwin do or fail to do in the particular situation, and what would a reasonable or prudent attorney have done in the same circumstance.[6] Expert testimony is generally necessary in legal malpractice cases to establish the parameters of acceptable professional conduct, given the underlying fact situation. Expert testimony is not required in cases where the breach is so obvious that it may be determined by the court as a matter of law or where the standard of care is within the ordinary knowledge and experience of the jurors.[7]

At the legal malpractice trial, the plaintiff produced three experienced divorce attorneys to give expert opinions concerning Colwin's conduct. This testimony was appropriate and necessary to establish the standard of care in this case, because the issue of what a reasonably prudent attorney would have done in this divorce action in 1977, with respect to property division and maintenance, is not within the realm of ordinary experience or common knowledge.

Jeanette contends that Colwin failed to use due care in the prosecution of the divorce case in that, among other things, he failed to properly inform and advise her of her legal rights and the tax consequences of the divorce settlement, and to use due care in the investigation of the marital assets and preparation for trial. Attorneys have been held liable for malpractice by other

---

[6] *See, Millonig,* 112 Wis. 2d at 450, and *Morgan v. Pennsylvania General Ins. Co.,* 87 Wis. 2d 723, 732, 275 N.W.2d 660 (1979).

[7] *See generally, Olfe,* 93 Wis. 2d 173, where we held that expert testimony was not required to establish the standard of care and departure from that standard in cases where the negligence of the attorney involved the attorney's failure to follow his client's instructions.

courts for giving improper advice and for failing to give advice to their clients in divorce cases.[8] For instance, in *Smith v. Lewis,* 13 Cal. 3d 349, 530 P.2d 589, 118 Cal. Rptr. 621 (1975), the Supreme Court of California affirmed a judgment against an attorney for malpractice in failing to assert his client's community interest in her husband's federal and state retirement benefits in divorce proceedings. The attorney had advised his client that her husband's retirement benefits were not community property. The attorney rested his defense to liability primarily on the proposition that the law with respect to the characterization of retirement benefits was very unclear at the time of the divorce proceeding. The court held,

"As the jury was correctly instructed, an attorney does not ordinarily guarantee the soundness of his opinions and, accordingly, is not liable for every mistake he may make in his practice. He is expected, however, to possess knowledge of those plain and elementary principles of law which are commonly known by well informed attorneys, and to discover those additional rules of law which, although not commonly known, may readily be found by standard research techniques. . . . If the law on a particular subject is doubtful or debatable, an attorney will not be held responsible for failing to anticipate the manner in which the uncertainty will be resolved. . . . But even with respect to an unsettled area of the law, we believe an attorney assumes an obligation to his client to undertake reasonable research in an effort to ascertain relevant legal principles and to make an informed decision as to a course of conduct based upon an intelligent assessment of the problem. In the instant case, ample evidence was introduced to support a jury finding that defendant failed to perform such adequate research into the question of the community character of retirement benefits and thus was unable to exercise the informed judgment to which his client was entitled." *Id.,* 13 Cal. 3d at 358–59. (Citations omitted.)

[8] *See generally,* Annot., 78 A.L.R.3d 255 (1977).

Similarly, in *Rhine v. Haley*, 238 Ark. 72, 378 S.W.2d 655 (1964), the Arkansas Supreme Court affirmed a judgment against an attorney for malpractice in securing a property settlement for his client in a divorce case. The testimony of attorneys was held to be properly admitted to establish what ordinarily careful and prudent attorneys would have done to protect the client's ability to recover under a property settlement negotiated by the attorney. The court pointed out that the attorney did not incorporate a lien into the property settlement to secure his client in the collection of the amounts due her, nor did he advise his client of the legal effect of her execution of the instrument.

Finally, in *Ishmael v. Millington*, 241 Cal. App. 2d 520, 50 Cal. Rptr. 592 (1966), the California Court of Appeals reversed a summary judgment in favor of the attorney in a malpractice action against him. The attorney had represented both parties in an uncontested divorce. The wife subsequently sued, alleging damages due to the attorney's negligent failure to properly investigate, advise, and disclose the true value of the community property before she entered into the property settlement. The court held,

"Representing the wife in an arm's length divorce, an attorney of ordinary professional skill would demand some verification of the husband's financial statement; or, at the minimum, inform the wife that the husband's statement was unconfirmed, that wives may be cheated, that prudence called for investigation and verification. Deprived of such disclosure, the wife cannot make a free and intelligent choice." 241 Cal. App. 2d at 527.

In this case, the three attorneys testifying for the plaintiff were all of the opinion that Colwin did not exercise the degree of skill, care, and judgment usually exercised by attorneys under like or similar circumstances. These witnesses found Colwin to be negligent in

the representation of Jeanette Helmbrecht in three major areas.

First, the attorneys testified that Colwin negligently failed to discover the extent and value of the marital assets. The formal discovery conducted by Colwin consisted solely of the taking of Dr. Helmbrecht's deposition. The manner in which this deposition was taken was criticized because Colwin failed to question the validity of Dr. Helmbrecht's information and to thoroughly depose Dr. Helmbrecht. This is evidenced by the fact that Dr. Helmbrecht's deposition was only ten pages in length. Also, it was asserted that Colwin neglected to trace Dr. Helmbrecht's income by requesting a copy of his bank statements and checks. This could have aided Colwin in discovering additional assets and in determining Dr. Helmbrecht's ability to pay alimony. Colwin never ascertained whether a financial statement had ever been filed with a lending institution and also failed to discern the contents of a safety deposit box, the existence of which was documented on Dr. Helmbrecht's tax return. Finally, Colwin was most severely criticized by the expert witnesses for not obtaining independent appraisals for the home, the dental practice, and the three trusts. Colwin merely accepted the values provided to him by Dr. Helmbrecht's attorney.

Second, the plaintiff's witnesses found Colwin to be negligent in not being prepared for trial. He did not educate his client as to what she could expect during the trial. There was no trial brief filed regarding the applicable law on the issues of property division and maintenance. Colwin did not prepare for the court Mrs. Helmbrecht's budget, which is essential in proving her needs for maintenance. Additionally, Colwin had no witnesses available to testify with respect to the value of the marital estate or the ability of Mrs. Helmbrecht to return to the work force and her earning capacity if she

did. It was argued that all of this preparation should have been undertaken to properly represent Mrs. Helmbrecht in her divorce action.

Finally, the attorneys testified that Colwin was negligent in failing to secure an adequate property settlement and maintenance award for Jeanette. Jeanette testified that Colwin assured her that the $25,000 she received as property settlement was close to fifty percent of the marital estate. The attorneys at trial maintained that Colwin had no knowledge of the full extent and value of the marital assets and, consequently, failed to secure for his client an adequate settlement of one-third to one-half of the marital estate. Additionally, the attorneys criticized the maintenance award for being only temporary in duration and inadequate in amount. Their opinions were based on Dr. Helmbrecht's income and earning capacity, the length of the marriage, and Mrs. Helmbrecht's ability or inability to return to the work force. It was also believed that if the tax consequences of the monthly payments would have been considered, *i.e.*, the fact that the payments were deductible to Dr. Helmbrecht and taxable to Mrs. Helmbrecht, the amount of maintenance actually received by Jeanette was significantly less than $42,000.

In reviewing the testimony, we must consider the facts of this particular case viewed as of the time of Colwin's alleged negligent conduct. Our United States Supreme Court has suggested that in determining the reasonableness of an attorney's conduct,

"A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland v. Washington,* 104 S. Ct. 2052, 2065 (1984).

In doing so, we hold that there was substantial evidence of malpractice before the jury. The court of appeals was correct in holding that

"Given the length of the marriage, the ages of the parties, marital assets of up to $263,000, and a single income of $62,000, we have no reservation in upholding the jury's determination that Colwin was negligent in recommending a $25,000 property award, $1,000 per month limited maintenance for three and one-half years, and $400 per month child support for two children." *Helmbrecht,* 117 Wis. 2d at 76–77.

■

Generally, an attorney is not required to exercise perfect judgment in every instance. He is not a guarantor of the results and will not be held accountable for an error in judgment if he acts in good faith and his acts are well-founded and in the best interest of his client. This case, however, does not involve an honest mistake in judgment.

"Judgment involves a reasoned process which presumes the accumulation of all available pertinent facts to arrive at the reasoned judgment." *Glenna v. Sullivan,* 310 Minn. 162, 170, 245 N.W.2d 869 (1976) (Todd, J., concurring).

Attorney Colwin did little or nothing to accumulate all the pertinent facts necessary to make an intelligent and professional evaluation of Mrs. Helmbrecht's claim.
■
Colwin failed to conduct adequate discovery of the marital estate and was not prepared at trial to prove the value of the marital assets or the amount necessary for maintenance and the duration thereof. Consequently, Colwin erroneously believed that he had secured for his client a favorable settlement. Colwin was not obligated to negotiate a settlement for his client, but, in doing so, he had a duty to negotiate with reasonable diligence.

This is difficult, if not impossible, when all of the relevant and pertinent facts are not known when an attorney enters into negotiations.

We hold that there was substantiated credible evidence to support the jury's finding of malpractice. The trial court was clearly wrong in granting the defendants' motion to dismiss after the verdict was returned.

### B. *Causation and Damages*

The issues of causation and damages in this case are dependent upon the merits of the 1977 divorce action. The plaintiff satisfies her burden of proving causation and damages by establishing that the divorce award she actually received is less than what a reasonable judge who was aware of all of the facts would have awarded in the 1977 divorce action. The jury returned an affirmative answer to the causation question for the defendant and a damage award of $250,000, with one juror dissenting as to the amount because she believed it was too high. In order to evaluate the jury's determination as to damages, we must review the evidence pertaining to the valuation of the marital estate, the maintenance award, and the plaintiff's attempt to revise the divorce judgment.

The two automobiles and the furniture were approximately evenly divided between Dr. and Mrs. Helmbrecht, leaving a marital estate which consisted primarily of the marital residence, Airstream trailer, four life insurance policies, retirement fund, Clifford trust, a remainder interest in the Helmbrecht trust, and Dr. Helmbrecht's interest in his dental practice. There was some testimony at trial that the marital estate also included a safety deposit box, a coin collection, and a gun collection. The jury was advised by both counsel not to include these items in their damage award because their value

had not been proven. Colwin testified that the value of the marital estate, excluding the automobiles and furniture, was approximately $107,000. Colwin admitted at trial that this valuation also excluded the dental practice, the two trusts, and the employer's contribution in the retirement plan. The plaintiff argues in her brief that the approximate value of the marital assets was $263,000. This is based in part on testimony that the dental practice was worth $58,000, that the Clifford trust had a corpus of $10,000, that the remainder interest in the Helmbrecht trust was worth $25,263, and that the retirement plan, including both the contributions of the employer and employee, was worth $34,000. There was some dispute at trial as to whether the value given to the dental practice erroneously included a value for goodwill,[9] but the jury was specifically instructed that if it was necessary to consider the valuation of the dental practice in determining damages, they were not to include the value of goodwill and the accounts receivable in their consideration.

The parties were in agreement that Jeanette should have received between one-third and one-half of the marital estate, probably closer to one-half. In fact, Jeanette testified that Colwin assured her at the divorce trial that she did receive one-half of the estate, and Judge Schultz testified at the malpractice trial that it was his understanding that she received one-half of the estate. The plaintiff argues that if Mrs. Helmbrecht would have received between one-third and one-half of the marital estate valued at $263,000, she would have received be-

---

[9] *See generally,* Comment, *The Recognition and Valuation of Professional Goodwill in the Marital Estate,* 66 Marq. L. Rev. 697 (1983); *Holbrook v. Holbrook,* 103 Wis. 2d 327, 309 N.W.2d 343 (Ct. App. 1981); and *In re Marriage of Lewis v. Lewis,* 113 Wis. 2d 172, 336 N.W.2d 171 (Ct. App. 1983).

tween $87,666 as a minimum and $131,500 as a maximum.

Second, we must consider damages with respect to the maintenance award. Jeanette received $1,000 a month for forty-two months, totalling $42,000. This maintenance award was criticized because it was too low in amount and too short in duration. The attorney testifying for the defendants even admitted that Jeanette was a proper candidate for indefinite support. The plaintiff's witnesses testified that Jeanette was a candidate for alimony in the range of $1,500 to $3,000 per month for an indefinite period of time, but for at least twelve years. The plaintiff argues that at a minimum, she was entitled to $1,500 a month for twelve years, totaling $216,000. This figure does not take into account the tax consequences of such an award.

Finally, there was testimony that Jeanette incurred more than $7,500 in attorney's fees in an attempt to modify the divorce judgment, for which she should also be compensated.

In viewing the evidence in the light most favorable to the plaintiff, we hold that there is sufficient evidence to sustain the damage award of $250,000. The evidence demonstrates that the approximate damage to Mrs. Helmbrecht, exclusive of what she actually received in the divorce settlement, was at a minimum between $244,166 and $288,000. It is apparent to this court that the jury weighed the evidence and resolved the conflicts in the testimony with respect to the values of the marital assets. This award is not based on speculation, as the trial court suggests.

### C. *Contributory Negligence*

The jury apportioned damages at seventy-five percent to the defendant and twenty-five percent to the plaintiff.

We disagree with this finding and hold, as a matter of law, that the plaintiff was not contributorily negligent.

First, we recognize that contributory negligence of a client can be a defense in a legal malpractice action. *Gustavson*, 87 Wis. 2d at 204, citing Annot., 45 A.L.R.2d 5, 17, 18 (1956). "However, contributory negligence is an affirmative defense which is waived if it is not pleaded." *Id.*[10] Colwin failed to allege in his answer that Jeanette was contributorily negligent with respect to the handling of the 1977 divorce action and, thus, has waived this defense.

Second, the burden of proof to establish contributory negligence is upon the defendant. *Grimm v. Milwaukee E. R. & L. Co.*, 138 Wis. 44, 119 N.W. 833 (1909). We find no credible evidence to support the proposition that Jeanette failed to exercise ordinary care for her own well-being, and, therefore, we hold that the defendant failed to meet his burden of proof. There is evidence in the record which demonstrates that Jeanette fully cooperated with Colwin. She met with him on occasion to discuss the divorce action; she advised him of new developments by letters; and she agreed to the divorce stipulation upon her counsel's advice. Colwin's sole argument to the jury concerning Jeanette's contributory negligence was that she failed to advise him of Mr. Helmbrecht's safety deposit box, gun collection, and coin collection. However, this omission on the part of Jeanette, even if it is true, should not be a factor in determining

---

[10] Section 802.02(3), Stats., which provides as follows:

"(3) AFFIRMATIVE DEFENSES. In pleading to a preceding pleading, a party *shall* set forth affirmatively any matter constituting an avoidance or affirmative defense including but not limited to the following: . . . contributory negligence . . . ." (Emphasis added.)

contributory negligence because the jury was specifically advised by counsel to disregard these items in their deliberations regarding damages. No evidence as to the value of these items was ever presented to the jury. If Jeanette was careless, it was in her misplaced reliance upon Colwin's negligent representation of her. We will not limit recovery in this case merely because Jeanette trusted Colwin to properly perform the services for which he was employed.

A similar situation arose in *Olfe,* 93 Wis. 2d 173, where we cited the following from one commentator:

" '[C]ontributory negligence should have no place as a defense against an obedient client who originally hired the attorney to help him avoid the very acts which are now labelled negligent.

" ' . . .

" 'The layman should be penalized for ignorance of legal matters only when he refuses proper help, and not when the attorney he hires fails in his duties.' Leavitt, *The Attorney as Defendant,* 13 Hast. L.J. 1, 32 (1961)." *Id.* at 188.

For the above-stated reasons, we hold that the jury erred in finding that Jeanette was contributorily negligent.

## III.

Judge Schultz, who presided over the divorce proceedings, testified in effect that he would have awarded substantially the same property division and maintenance even if the divorce stipulation had never been negotiated. The jury was erroneously instructed to calculate damages based on what Judge Schultz would have awarded in 1977. If this instruction would have been followed, the jury would have awarded little or no damages to Jeanette. The court of appeals ordered a new trial, holding,

"Although this and other instructions were incorrect and favored Colwin, the jury had no right to ignore them, which they did. We cannot uphold a damage award made in complete disregard of the court's instruction even though the award may be reasonable." *Helmbrecht,* 117 Wis. 2d at 78.

We disagree and find no justification for a new trial in this case.

The court of appeals' use of *Johnson v. Ray,* 99 Wis. 2d 777, 299 N.W.2d 849 (1981), is misplaced. *Johnson* involved an action for assault and battery against a police officer for excessive use of force in making an arrest. We held that the trial court erred in not instructing the jury that damages were to be allowed only for injuries caused by the use of excessive force as opposed to those injuries caused by the permissible exercise of reasonable force. Unlike the instruction error in *Johnson,* the erroneous instruction in this case goes to the *manner* in which the jury should calculate damages. There is no question here, as there was in *Johnson,* of whether the damage award wrongly compensated for injuries caused by means other than the defendant's actions.

A new trial is not warranted in cases where the trial court erroneously gave an instruction unless the error is determined to be prejudicial. *Lutz v. Shelby Mut. Ins. Co.,* 70 Wis. 2d 743, 750–51, 235 N.W.2d 426 (1975). The instruction given in this case was clearly detrimental to the plaintiff, but the plaintiff is not the one urging this court to grant a new trial. We conclude that the trial court's error was not prejudicial error, because a different result would not have occurred if the jury had been properly instructed. The jury returned a verdict in favor of the plaintiff, obviously ignoring the erroneous instruction and opting to use the proper standard concerning damages. Second, we have held in the previous

sections of this opinion that the verdict answers regarding the negligence of Colwin and the damages sustained by Mrs. Helmbrecht are supported by credible evidence. A new trial on these issues would be meaningless.

## IV.

Had the divorce stipulation between Dr. and Mrs. Helmbrecht never been entered into, the divorce suit would have been tried before a trial judge and not a jury.[11] For this reason, the defendants argue that the jury in the legal malpractice action should not have been allowed to decide, in making its determination of damages, what a reasonable judge would have awarded in 1977. The defendants stress that the jury was called upon to make a determination normally made exclusively by a judge.

We reject the defendants' argument. Even though our legislature has given exclusive jurisdiction over matters affecting the family to the court, the instant action is not a divorce action. This is a suit alleging negligence of an attorney, and the Wisconsin Constitution guarantees a jury trial if the parties desire one.[12]

---

[11] *See*, sec. 247.12(1), Stats. 1977 (now sec. 767.12(1)), which provides as follows: "**Trial procedure.** (1) PROCEEDINGS. In actions affecting marriage, all hearings and trials to determine whether judgment shall be granted shall be before the court. The testimony shall be taken by the reporter and shall be written out and filed with the record if so ordered by the court. Custody proceedings shall receive priority in being set for hearing."

[12] Wis. Const. art. I, sec. 5, which provides as follows: "**Trial by jury; verdict in civil cases.** . . . The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy; but a jury trial may be waived by the parties in all cases in the manner prescribed by law. Provided, however, that the legislature may, from time to time, by statute provide that a valid verdict, in civil cases, may

Second, the focus is not on whether the original action is tried before a jury, but, rather, whether the issue remaining in the malpractice action is one of law or one of fact. Generally, causation and damages are issues of fact for the trier of fact,[13] but this may not necessarily be true in a legal malpractice case where the determination of causation and damages is dependent on what the outcome would have been in the original action absent the negligence of the attorney.

The distinction between issues of fact and law in the earlier litigation carries over into the malpractice action. This is explained in *Chocktoot v. Smith,* 280 Or. 567. *Chocktoot* involved a legal malpractice case brought by the personal representative of a decedent against two attorneys who had represented the decedent in an earlier proceeding. The attorneys had represented the decedent in a declaratory judgment proceeding before a trial judge without a jury. The issue before the trial judge was whether the decedent was the son of a James Brown and,

be based on the votes of a specified number of the jury, not less than five-sixths thereof."

[13] *See, Merco Distg. Corp. v. Com'l. Police Alarm Co.,* 84 Wis. 2d 455, 458–59, 267 N.W.2d 652 (1978), where we held, "The test of cause in Wisconsin is whether the defendant's negligence was a substantial factor in contributing to the result. . . . The phrase 'substantial factor' denotes that the defendant's conduct has such an effect in producing the harm as to lead the trier of fact, as a reasonable person, to regard it as a cause, using that word in the popular sense. . . . There may be more than one substantial causative factor in any given case. . . . Causation is a fact; the existence of causation frequently is an inference to be drawn from the circumstances by the trier of fact." (Citations omitted). *See also, Toulon v. Nagle,* 67 Wis. 2d 233, 245, 226 N.W.2d 480 (1975) (contract action), and *Keithley v. Keithley,* 95 Wis. 2d 136, 138, 289 N.W.2d 368 (Ct. App. 1980), citing *Mertens v. Lundquist,* 15 Wis. 2d 540, 113 N.W.2d 149 (1962) (wrongful death cases), holding that determination of damages normally involves a question of fact, properly within the province of the jury.

thus, entitled to share in the estate of Rowley Lalo, Jr. The judge ruled against the decedent and, following his death, the decedent's representative commenced the malpractice action, alleging that the attorneys negligently failed to discover and present material evidence and to appeal the adverse decision of the trial judge. The issues were phrased by the court as follows:

"Who, judge or jury, must decide whether an attorney's negligence harmed his client, and upon what evidence, when the negligence concerned an issue decided by a court rather than a jury?" *Chocktoot*, 280 Or. at 569.

As mentioned earlier, the *Chocktoot* court held that in a legal malpractice action, the trial judge should decide disputed issues of law, and the jury should decide disputed issues of fact. The jury should substitute its judgment for the fact finder of the initial action, be it a jury, judge, administrative hearings arbitrator, court-martial, etc.

"However, no jury can reach its own judgment on the proper outcome of an earlier case that hinged on an issue of law." *Id.* at 572–73.

In order for the personal representative in *Chocktoot* to prove causation and damages, he had to show that, but for the negligence of the attorneys, the outcome of the declaratory judgment would have been favorable to the decedent. The court held,

"We conclude in short, that in determining the probable consequences of an attorney's earlier negligence in a later action for malpractice, the line dividing the responsibility of judge and jury runs between questions of law and questions of fact. This is not quite the same division as that made by the trial court when faced with the necessity to decide this issue. It drew the line between those questions which would have been for a jury and those for the court in the original proceeding. But that rule would withdraw from the jury in the malpractice

trial the evaluation of the probable outcome of purely factual disputes in all nonjury cases, including all equity, probate, or administrative proceedings. As we have stated, there is no reason why the jury cannot replicate the judgment of another factfinding tribunal, whatever its composition.

"Dividing the function of judge and jury in determining the consequences of legal malpractice between questions of law and questions of fact leads to these principles for the trial of such cases:

"The question what decision should have followed in the earlier case if the defendant attorneys had taken proper legal steps is a question of law for the court.[14] Consequently such legal rulings are also open for briefing and review on appeal.

"The question what outcome should have followed if defendants had conducted a proper investigation, presentation (or exclusion) of evidence, or other steps bearing on a decision based on facts remains a question of fact for the jury (or for a judge when the malpractice case is tried without a jury). Similarly, it will be reviewable on appeal only to the same extent as other factual determinations." *Id.* at 574–75.[15]

We recognize that the instant case differs slightly from *Chocktoot* because in *Chocktoot* the issue in the initial action was strictly one of fact, whereas in this case, the issues before Judge Schultz were mixed questions of law and fact. In a divorce action, the trial judge will make conclusions of law based upon his findings of fact. For

---

[14] The court is referring to the attorney's failure to appeal the adverse decision to the appellate court. This is a question of law because the trial court in the malpractice suit would have to decide the success of such an appeal. *See, General Acc. F. & L. Assur. Corp. v. Cosgrove,* 257 Wis. 25, 42 N.W.2d 155 (1950), involving the lawyer's failure to settle the bill of exceptions which resulted in the client's losing his right to appeal.

[15] *Accord, Sola v. Clostermann,* 67 Or. App. 468, 679 P.2d 317 (1984) (involving an attorney's failure to appeal), and *Martin v. Hall,* 20 Cal. App. 3d 414, 97 Cal. Rptr. 730 (1971) (involving an attorney's failure to raise defenses).

example, a maintenance award to one spouse is based upon a factual finding of that spouse's need and the other spouse's ability to pay. *See,* sec. 767.26, Stats. In determining what a reasonable judge would have awarded Jeanette Helmbrecht in 1977, the jury is presented with the same questions of law and fact. The court in *Chocktoot* suggests that when the initial action involves both legal and factual elements, the trial court in a malpractice action should separate these issues and instruct the jury on the legal aspects of the case. *Id.* at 575.

The damage instruction given to the jury in this case read as follows:

"The measure of damages in a malpractice action charging an attorney with negligence in prosecuting a divorce action is the value of the pecuniary or money loss, that is, the amount that would have been recovered by the plaintiff except for the attorney's negligence.

"Expenses incurred by the client, as a result of negligence of an attorney, are proper elements of damages.

"In this case the pecuniary loss, if any, would be the difference between the value of the pecuniary benefits as awarded by the trial court based upon the stipulated agreement of the parties to the divorce action and the amount of pecuniary benefits that would have been awarded by the trial Court except for the defendant's negligence."

The trial court erred in not instructing the jury on the legal elements in the case. At a minimum, the jury instructions should have addressed what factors a court applies to its findings of fact in making its determination as to property division and maintenance. Our legislature has conveniently codified the various factors to be weighed and balanced by a judge in that regard.[16] If a

---

[16] *See,* sec. 767.255, Stats., which provides in pertinent part as follows:

"767.255 **Property division.** Upon every judgment of annulment, divorce or legal separation, or in rendering a judgment in an action under s. 767.02(1)(h), the court shall divide the prop-

jury would be properly instructed on the law in this matter, we are confident that it could reasonably apply the law to the particular facts involved and resolve the issue

erty of the parties and divest and transfer the title of any such property accordingly. . . . The court shall presume that all other property is to be divided equally between the parties, but may alter this distribution without regard to marital misconduct after considering:

"(1) The length of the marriage.

"(2) The property brought to the marriage by each party.

"(2r) Whether one of the parties has substantial assets not subject to division by the court.

"(3) The contribution of each party to the marriage, giving appropriate economic value to each party's contribution in homemaking and child care services.

"(4) The age and physical and emotional health of the parties.

"(5) The contribution by one party to the education, training or increased earning power of the other.

"(6) The earning capacity of each party, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage.

"(7) The desirability of awarding the family home or the right to live therein for a reasonable period to the party having custody of any children.

"(8) The amount and duration of an order under s. 767.26 granting maintenance payments to either party, any order for periodic family support payments under s. 767.261 and whether the property division is in lieu of such payments.

"(9) Other economic circumstances of each party, including pension benefits, vested or unvested, and future interests.

"(10) The tax consequences to each party.

"(11) Any written agreement made by the parties before or during the marriage concerning any arrangement for property distribution; such agreements shall be binding upon the court except that no such agreement shall be binding where the terms of the agreement are inequitable as to either party. The court shall presume any such agreement to be equitable as to both parties.

of what a reasonable judge would have awarded in the initial divorce action. The question of what a reasonable judge would have awarded as property division and maintenance is no more complicated than other issues decided by juries every day all across this nation.

"(12) Such other factors as the court may in each individual case determine to be relevant."; and,

Section 767.26, Stats., which provides as follows:

"**767.26 Maintenance payments.** Upon every judgment of annulment, divorce or legal separation, or in rendering a judgment in an action under s. 767.02(1)(g) or (j), the court may grant an order requiring maintenance payments to either party for a limited or indefinite length of time after considering:

"(1) The length of the marriage.

"(2) The age and emotional health of the parties.

"(3) The division of property made under s. 767.255.

"(4) The educational level of each party at the time of marriage and at the time the action is commenced.

"(5) The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

"(6) The feasibility that the party seeking maintenance can become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and, if so, the length of time necessary to achieve this goal.

"(7) The tax consequences to each party.

"(8) Any mutual agreement made by the parties before or during the marriage, according to the terms of which one party has made financial or service contributions to the other with the expectation of reciprocation or other compensation in the future, where such repayment has not been made, or any mutual agreement made by the parties before or during the marriage concerning any arrangement for the financial support of the parties.

"(9) The contribution by one party to the education, training or increased earning power of the other.

"(10) Such other factors as the court may in each individual case determine to be relevant."

In considering whether a new trial is warranted in this case, we must decide whether the resultant verdict would have been different had the error not occurred. *Lutz,* 70 Wis. 2d at 751. The damage instruction given to the jury is not misleading; it is incomplete in that it lacks necessary information for the jury's determination of damages. The jury did hear considerable testimony concerning the factors that each expert witness considered in arriving at their opinions with respect to a proper property division and maintenance award. The jury was given little guidance on the importance of these factors. Although this court holds that the trial court did not properly instruct the jury, we will not grant a new trial in this case, because such error is not prejudicial error. The damage award is supported by sufficient credible evidence and would not have been different if the jury had been thoroughly instructed.

*By the Court.*—The decision of the court of appeals is affirmed in part and reversed in part.