641 So.2d 1371 (1994)
Gary L. FERNANDES, Sr., Appellant,
v.
Bobby BARRS and Shirley Barrs, his wife, Appellees.
No. 93-1113.
District Court of Appeal of Florida, First District.
August 30, 1994.
*1372 John S. Derr of Bush & Derr, P.A., Tallahassee, Karen J. Haas of Law Offices of Karen J. Haas, Miami, and Michael Arlington, Jacksonville, for appellant.
Rod Bowdoin of Darby, Peele, Bowdoin & Payne, Lake City, for appellees.
DAVIS, Judge.
Attorney Gary Fernandes appeals a trial court judgment against him in the amount of $398,670 in damages for legal malpractice in his representation of Bobby and Shirley Barrs, entered after a bench trial, and appeals an order awarding attorney's fees and costs in the amount of $76,543.66. The damages were apportioned as follows: $378,687.00 for Bobby Barrs' damages, $90,000 for Shirley Barrs' damages for loss of consortium, less the $70,000 received in settlement from Lake City Community College. Mr. Fernandes asserts that the trial court erred because there was no evidence of a contract between himself and the Barrs; that, even if there had been a contract, the measure of damages in a legal malpractice action is the amount which could have been recovered in the underlying lawsuit, which in this case was limited by the $100,000 per person cap on damages against State agencies or subdivisions, pursuant to section 768.28, Florida Statutes; and finally, that the trial court erred in awarding attorney's fees to the Barrs because the lack of evidence of any contract for representation made it reasonable for Mr. Fernandes to reject the Barrs' $75,000 offer of judgment. We affirm the trial court's judgment insofar as it determines that a contract existed between Mr. Fernandes and the Barrs for legal representation and affirm the award of attorney's fees and costs. We reverse in part the award of damages and remand for further proceedings.
Bobby Barrs owned and operated a commercial and automotive battery business. On September 15, 1987, Mr. Barrs went to Lake City Community College to deliver a battery. He went to the maintenance shop and had to wait. He sat in a chair which appeared normal and had no warning signs on it. In fact, the chair had been sent to the shop for repair. While Mr. Barrs was sitting in the chair, it collapsed. His resulting back and hand injuries required four surgeries. Mr. Barrs tried for some time to get the College to settle with him without his having to hire an attorney.
The parties agree that Mr. Barrs first called Mr. Fernandes on November 29, 1989, and made an appointment to come in and see him. That appointment was held on December 1, 1989. It is also undisputed that no written fee agreement or other written contract *1373 of employment was executed at that date or at any other time. Mr. Fernandes asserts that there was no evidence whatsoever below to support the finding of the trial court that a contract existed. On February 20, 1990, Mr. Fernandes sent a letter to Mr. and Mrs. Barrs, saying he could not represent them in their "worker's compensation case" and returning some medical records and papers they had given to him.
Mr. Fernandes takes the position that he spoke by phone with the Barrs in July 1990, and that as a result of that phone call he called Mr. Mechaney, the claims adjuster for the College's insurance carrier. Mr. Fernandes asserts that he told Mr. Mechaney that he was calling to see what could be done to resolve the claim, but that he was not representing the Barrs at that time. Though he could not tell if the Barrs were in Mr. Fernandes' office, Mr. Mechaney confirmed that Mr. Fernandes told him he was not representing the Barrs. Mr. Fernandes denies seeing the Barrs in person again until November 1990, after the statute had run. The Barrs assert they came to Fernandes' office in both July and August 1990.
Mr. and Mrs. Barrs assert that they actually went to see Mr. Fernandes on July 6, 1990, and that he placed that call to Mr. Mechaney while they were in his office. After that call and some further discussion, according to the Barrs, Mr. Fernandes offered to represent them on a contingency basis for a fee of 33 1/3% of the recovery plus expenses, and the Barrs accepted. Purportedly, Mr. Fernandes told them then and again at another meeting in early August that he was too busy to deal with a written contract just then, but that there was plenty of time to get to that later, since they had a four year statute of limitations on their claim. According to the Barrs, Mrs. Barrs phoned Mr. Fernandes on August 6th, and he said he was going to be speaking with someone representing the claims adjuster and she should call back that afternoon. She produced phone records as evidence of those two calls. Allegedly, Mr. Fernandes told Mrs. Barrs during the second phone conversation to come in for a conference, and Mr. and Mrs. Barrs went to Fernandes' office some time between that conversation on August 6th and August 10th. The Barrs assert that at this August meeting Mr. Fernandes advised them to obtain a letter from Dr. Slattery to connect Mr. Barrs' carpal tunnel syndrome to his accident. The Barrs obtained such a letter, and it was dated August 10th. Though Mr. Fernandes denies that this August meeting even took place, the Barrs both assert that he told them the insurance carrier for the College required this letter and that it was important to get it as soon as possible. Mrs. Barrs testified further that this August 10th letter from Dr. Slattery was one of the documents returned to her when she asked for her husband's file after Mr. Fernandes' second letter saying he could not represent them, dated November 16, 1990.
The three year time limit for filing a written notice of claim expired in September 1990. Mrs. Barrs testified that she next spoke with Mr. Fernandes by phone on November 9, 1990, at which time he introduced her to a partner in his firm named Mr. Turnage who would be working on their case, while assuring them he, Fernandes, was still their lawyer. Mr. Mechaney testified that he spoke with Mr. Fernandes by phone on November 9, 1990, and that Fernandes told Mechaney that Fernandes was representing the Barrs, and that a Mr. Turnage from his firm would be handling the matter.
The parties agree that Mr. and Mrs. Barrs came in to Mr. Fernandes' office on November 15, 1990. The Barrs assert they came in because they had an appointment. Mr. Fernandes asserts they showed up unannounced and unexpected, and that he asked Mr. with Mr. and Mrs. Barrs, Mr. Turnage figured out that the three year time limit for filing a written notice of claim had expired. He told them to go home. A letter dated November 16, 1990, was sent to the Barrs in which Mr. Fernandes and Mr. Turnage informed the Barrs that their firm could not undertake to represent them because the time had run for giving the statutorily required notice.
The first issue is whether there was sufficient evidence of the existence of a contract for representation to sustain the lower *1374 court's finding that a contract existed. Mr. Fernandes relies on the fact that the Rules of Professional Conduct for members of The Florida Bar require contingent fee contracts to be in writing. This reliance is misplaced. Despite this rule requiring contingency fee contracts to be in writing, some courts have enforced oral contingent fee contracts, holding that the rule does not create any presumption that a legal duty has been breached. See, e.g., Harvard Farms, Inc. v. National Casualty Co., 617 So.2d 400 (Fla. 3d DCA 1993). If the client cannot use the failure to obey the rule to establish that a legal duty was breached, the attorney may not be permitted to rely upon the existence of the rule to establish that a contract was not created in a situation where there is evidence of intent to form an oral contingent fee contract.
Furthermore, notwithstanding the fact that Mr. Fernandes asserts no less than ten times in his briefs that there was no evidence of a contract between himself and the Barrs, there was in fact competent substantial evidence supporting the claim of the Barrs that such a contract existed. Mrs. Barrs produced office records with notes of appointments that Mr. Fernandes denied ever took place. She produced phone records to back her testimony regarding her phone calls with Fernandes. Attorney Fernandes denied speaking with the Barrs on November 9, 1990, and informing them that, while he was their attorney, his partner Mr. Turnage would be helping him with the paperwork. The Bares' contention that that conversation took place was supported by the apparently disinterested testimony of Mr. Mechaney, an employee of the College's claims adjuster. Mr. Mechaney testified that he too spoke with Fernandes on November 9, 1990, and that Fernandes told Mechaney that he was representing the Barrs and that a Mr. Turnage from his office would be working on the case. With regard to the specifics of the contract, the Barrs testified that it was formed on July 6, 1990, that they agreed to pay Mr. Fernandes a contingent fee of 33 1/3% plus expenses, and that they discussed with him on that day what was meant by expenses. As in Isaak v. Chardan Corp., 532 So.2d 1364 (Fla. 2d DCA 1988), there is sufficient competent substantial evidence in this conflicting testimony to support a conclusion that an oral contract did exist.
Mr. Fernandes' second ground for asserting that the trial court erred is that cases involving claims of attorney malpractice limit the recovery against the attorney to that which the claimant would have been entitled to recover on the underlying claim, and therefore his liability could be no greater than the statutory cap on damages which would have applied in the Barrs' lawsuit against Lake City Community College. Mr. Fernandes argues that if there was a contract his liability should be measured as follows: $100,000 for the claims of Bobby Barrs, $90,000 for the claims of Shirley Barrs, less the $70,000 the Barrs received in settlement from Lake City Community College, for a total of $120,000. The lower court held that the Barrs would have obtained a judgment in the underlying action in excess of the statutory cap. The Barrs therefore respond that the law would have permitted them to seek recovery of that portion of judgment in excess of the cap through a claims bill to the Florida Legislature, Berek v. Metropolitan Dade County, 422 So.2d 838, 840 (Fla. 1982), and that Mr. Fernandes' malpractice cost them the opportunity to present that claims bill for the amount of their damages in excess of the statutory cap.
The law of this state is that the plaintiff in a legal malpractice action must prove three things. The first of these is the employment of the attorney, which the trial court correctly determined existed. The second is the lawyer's neglect of a reasonable duty, which was also proven in this case. The third element of proof of legal malpractice is that the attorney's negligence was the proximate cause of loss to the client. Freeman v. Rubin, 318 So.2d 540, 543 (Fla. 3d DCA 1975). The Barrs urge this court to interpret this last element as being satisfied by evidence of the judgment which would have been obtained in the underlying action. Mr. Fernandes responds that the measure of damages in an action for attorney malpractice is "the amount that would have been recovered by the client except for the attorney's *1375 negligence" id., interpreting this rule as one imposing a burden on the plaintiff to provide evidence of the amount of the judgment which could actually have been collected.
The general rule is that the client/plaintiff in a legal malpractice action must prove both that a favorable result would have been achieved in the underlying litigation but for the negligence of the attorney/defendant and that any judgment which could have been recovered would have been collectible. See Hand v. Hustad, 440 So.2d 518 (Fla. 4th DCA 1983) (reversing directed verdict in favor of defendant/attorney in legal malpractice case because plaintiff had offered sufficient evidence of collectibility to present a jury question). In Coopers & Lybrand v. Trustees of the Archdiocese of Miami/Diocese of St. Petersburg Health & Welfare Plan, 536 So.2d 278 (Fla. 3d DCA 1988), review denied mem., 545 So.2d 869 (Fla. 1989), the Third District Court of Appeal addressed the calculation of damages in a case involving professional malpractice by accountants. The well-reasoned decision explains that the proper measure of damages in an action for professional malpractice, be it against an accountant, lawyer, or other professional, is the amount proximately caused by the negligence. The plaintiff is only entitled to the damages which can be proven to have been caused by the negligence, and is not entitled to speculative damages. The court held that the plaintiff could not recover damages in that case in the amount of an insurance policy which the accountant's audit failed to reveal had not been obtained, due to the absence of evidence that such a policy could have been obtained and "that they would have successfully recovered on that policy." Id. at 282.
The vast majority of other jurisdictions which have considered this question have imposed on the plaintiff/client the burden to prove the amount of the judgment which would have been obtained but for the attorney's negligence, and that the judgment would have been collectible in part. See, e.g., Cook v. Superior Court of San Diego County, 19 Cal. App.3d 832, 97 Cal. Rptr. 189, 190 (Dist.Ct. 1971) ("client must show the attorney was negligent in prosecuting the case and, but for such negligence, the case would have resulted in the recovery and collection of a judgment favorable to the client"); McDow v. Dixon, 138 Ga. App. 338, 226 S.E.2d 145, 147 (Ct. 1976) (measure of client's damages is the amount of the judgment which would have been collectible); Kohler v. Woollen, Brown & Hawkins, 15 Ill. App.3d 455, 304 N.E.2d 677, 679 (Ct. 1973) ("In an action for legal malpractice a plaintiff has the burden of showing the validity of the demand which he lost and that it could have been realized if the attorneys had not been negligent."); Beeck v. Aquaslide `n' Dive Corp., 350 N.W.2d 149, 160-61 (Iowa 1984) (the amount of the judgment which was collectible was the measure of damages against the negligent attorney, otherwise the client would be placed in a better position by virtue of the malpractice; Iowa law required plaintiff to introduce evidence of collectibility); Christy v. Saliterman, 288 Minn. 144, 179 N.W.2d 288, 293 (1970) (in legal malpractice action, plaintiff had burden of proving both that the attorney negligently permitted the statute of limitations to extinguish plaintiff's claim and that plaintiff could have recovered on that claim); Leavy v. Kramer, 34 Misc.2d 479, 226 N.Y.S.2d 349, 350 (N.Y. Sup. Ct. 1962) ("It is incumbent upon the plaintiff to prove that the original claim would or could have been collected but for the attorney's negligence."); Taylor Oil Co. v. Weisensee, 334 N.W.2d 27, 29, 29 n. 2 (S.D. 1983) (following rule of "many jurisdictions" that plaintiff bears burden of establishing factual evidence of the amount of the judgment which would have been collectible); Gibson v. Johnson, 414 S.W.2d 235, 238-39 (Tex. Ct. App. 1967), cert. denied, 390 U.S. 946, 88 S.Ct. 1032, 19 L.Ed.2d 1135 (1968) ("the burden of proof is on the client to prove that this suit would have been successful but for the negligence of his attorney, and to show what amount would have been collectible had he recovered a judgment"); cf. Hammons v. Schrunk, 209 Or. 127, 305 P.2d 405 (1956) (in action against Sheriff whose failure to timely serve summons resulted in loss of cause of action due to running of statute of limitations, plaintiff had to prove validity and collectibility of underlying claim). But see Jourdain v. Dineen, *1376 527 A.2d 1304 (Me. 1987) (declining to follow majority rule on burden of proving collectibility, holding that in Maine uncollectibility constitutes an affirmative defense that must be pleaded and proved by the defendant); Hoppe v. Ranzini, 158 N.J. Super. 158, 385 A.2d 913, 920 (Ct.App.Div. 1978) ("fairness requires that the burden of proof with respect to the issue of collectibility should be upon the attorney defendants, notwithstanding the rule elsewhere that places that burden on plaintiff").
We agree that the burden should ordinarily be on the plaintiff in a legal malpractice action to prove the collectibility of the judgment which would have been obtained in the underlying action but for the attorney's negligence, in order to establish the amount of damages proximately caused by the negligence. Such a rule prevents a windfall to the client by preventing him from recovering more from the attorney than he could have actually obtained from the tortfeasor in the underlying action. The plaintiff may ordinarily satisfy this burden with evidence of the original tortfeasor's financial status, insurance coverage, property ownership, and so forth if such evidence can be obtained. McDow v. Dixon, 138 Ga. App. 338, 226 S.E.2d 145, 148 (Ga.Ct.App. 1976). We hold, however, that when the negligence of the attorney makes it impossible to prove the collectibility of the claim, the burden should be shifted to the attorney to prove that the judgment or any portion thereof was uncollectible. Accord Jernigan v. Giard, 398 Mass. 721, 500 N.E.2d 806, 807 (1986).
Under the unusual facts of this case, the only way that the Barrs could collect the full amount of the judgment they would have obtained against Lake City Community College would be to go through the process of seeking a claims relief act in the Florida Legislature. This claims relief procedure, however, is completely discretionary with the Legislature. See South Broward Topeekee-geeyugnee Park District v. Martin, 564 So.2d 1265, 1267 (Fla. 4th DCA 1990), review denied mem., 576 So.2d 291 (Fla. 1991) (plaintiff entitled to entry of judgment in full amount of damages and then may report excess over statutory cap to legislature by means of claims bill, to recover "as the legislature may see fit ..."). Attorney Fernandes' negligence resulted in the Barrs being unable to obtain a judgment for the full amount of their claim and in their inability to pursue a claims relief act. Given the fact that this is a completely discretionary procedure, there is no way that the Barrs could ever prove the amount they would have collected through the claims relief process. We conclude that the burden of proving uncollectibility properly belonged to the defendant/attorney in this case. No attempt was made below to offer evidence of the collectibility or uncollectibility of a claims bill for the amount in excess of the statutory cap. Nor did the trial court make any finding with regard to the issue of collectibility. The only Florida decision involving the issue of whether the proper measure of damages was the amount of the judgment or the amount of the judgment which was collectible, and the issue of who bears the burden of proving collectibility is Hand v. Hustad, 440 So.2d 518 (Fla. 4th DCA 1983). That decision does not discuss any of these issues, simply reversing a directed verdict because the plaintiff had offered enough evidence of collectibility to reach the jury. We conclude that this case presents novel questions of law which have not previously been addressed in any Florida decisions.
Accordingly, we affirm the judgment for damages of $120,000, calculated as follows: $100,000 for Bobby Barrs' damages, $90,000 for Shirley Barrs' damages, less the $70,000 received in settlement from Lake City Community College. Mr. Fernandes has conceded that he is liable for this amount if there was a contract between himself and Mr. and Mrs. Barrs. The collectibility of this portion of the judgment was not disputed. However, we reverse the remainder of the judgment for damages, and remand for a hearing on the uncollectibility of the damages in excess of the statutory cap. We do so because we have announced a new rule of law imposing a burden of proof upon Mr. Fernandes which he could not have known during the initial trial was his to carry.
The final issue raised by Mr. Fernandes is that the trial court erred in awarding attorney's fees to the Barrs because the *1377 lack of evidence of any contract for representation made it reasonable for Mr. Fernandes to reject the Barrs' $75,000 offer of judgment, despite the fact that the amount of the judgment was more than 25% greater than the offer of judgment he refused. We are not persuaded. The judge below concluded, based upon competent substantial evidence, that a contract did exist, and Mr. Fernandes relies solely upon his own interpretation of the record and one quote out of context to assert that he acted reasonably in declining to settle based upon the lack of any such contract. The only issue disputed was the entitlement to any attorney's fees and costs; there was no dispute over the amount. The partial amount of the judgment which we affirm is still more than 25% greater than the offer of judgment which was rejected. Therefore we affirm the award of attorney's fees in the amount of $76,543.66.
For the foregoing reasons, the judgment is AFFIRMED IN PART, REVERSED IN PART, and REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
JOANOS and LAWRENCE, JJ., concur.