719 So.2d 325 (1998)
Virginia TARLETON, Appellant/Cross-Appellee,
v.
ARNSTEIN & LEHR, a partnership, Appellee/Cross-Appellant.
No. 97-1237.
District Court of Appeal of Florida, Fourth District.
August 19, 1998.
Rehearing, Rehearing, Certification of Question and Conflict Denied November 2, 1998.
*326 Dyanne E. Feinberg and Lewis N. Brown of Gilbride, Heller & Brown, P.A., Miami, and Joseph E. Altschul of Altschul & Landy, P.A., Weston, for appellant/cross-appellee.
John Beranek of Ausley & McMullen, Tallahassee, and J. Michael Burman of Burman, Critton & Luttier, North Palm Beach, for appellee/cross-appellant.
Rehearing, Rehearing En Banc, Certification of Question and Conflict Denied November 2, 1998.
PER CURIAM.
Virginia Tarleton ("Former Wife") appeals and Arnstein & Lehr (the "Firm") crossappeals from a final judgment in a legal malpractice action. We affirm the Firm's cross-appeal without further discussion. However, we reverse the final judgment because we find merit in the points raised by Former Wife on appeal.
This case concerns a legal malpractice action that arose out of the Firm's representation of Former Wife in a 1993 divorce action. During opening statements, Former Wife's counsel stated to the jury that they were going to hear a "trial within a trial." He explained that they would not only be trying the Firm's conduct in the malpractice action, but that it would also be necessary to try the underlying dissolution proceeding.
Former Wife and Former Husband were married in 1977 and they launched numerous companies together. The companies were very successful. The couple had an oral agreement that they would maintain their assets separately, but be equally responsible for household expenses.
*327 In 1984, the couple started having disputes over business matters, and Former Wife left her position as president of one of the couple's companies. In exchange for her resignation, Former Wife testified that Former Husband told her that he would pay for all of the previously shared household expenses. To support her testimony, a document entitled "Agreement" was introduced in evidence.
While the couple remained married, the common household expenses increased to over $23,000 per month. In 1988, Former Husband began facing financial difficulties and was unable to pay the joint household expenses. Former Wife then began to draw on her savings in order to pay for such expenses. In order to keep track of the sums Former Wife was expending, Former Husband signed a series of promissory notes in which he acknowledged that he had to repay Former Wife for the advances that she was making for the household expenses. At the time the couple divorced, the promissory notes reflected that Former Husband owed Former Wife over $700,000 for the advances she had made.
In 1992, Former Wife filed a Petition for Dissolution of Marriage. She hired the Firm to represent her in the dissolution proceeding. The Firm recommended to Former Wife that she pursue two separate lawsuits, one seeking dissolution and the other seeking to recover on the promissory notes.
Former Wife entered into a settlement agreement with Former Husband in the dissolution action based upon the representations of the Firm that she would be able to bring a separate action to enforce the debt underlying the promissory notes. Former Wife testified that she asked the Firm about the "release" clause in the settlement agreement and was assured she could bring an action on the promissory notes.
After the divorce was final, the Firm was unable to represent Former Wife in any subsequent action against Former Husband. Therefore, Former Wife hired another attorney and discussed filing a separate suit against Former Husband for the money owed her under the promissory notes. However, her new attorney told her that she could not pursue any further claim on the promissory notes against Former Husband because of the release clause in the settlement agreement. Former Wife then brought a legal malpractice claim against the Firm.
Former Wife's expert, James Miller ("Expert"), testified that the Firm's representation of Former Wife fell below the proper standard of care and constituted malpractice. In particular, he found that the Firm's conduct departed from the proper standard of care in advising Former Wife that she could enter into the marital settlement agreement and still pursue a separate cause of action against Former Husband to enforce the promissory notes. Further, Expert opined that the promissory notes would have been admissible in the dissolution proceeding, and if they constituted a preponderance of the evidence, would have led the judge to conclude that the marital contracts existed and would, thus, be enforceable.
Former Wife's Accountant, Harvey Muskat ("Accountant"), reviewed the promissory notes, bank accounts, and other financial data concerning the parties assets. Based upon his review of this information, he concluded that Former Husband owed Former Wife a large sum of money. In performing the accounting, he discovered that Former Husband owed Former Wife more money than was reflected in the promissory notes. He determined that Former Husband owed Former Wife a total of $1,990,290.
Following the dissolution, the parties' joint real estate was sold for $6,049,700. This money was used to pay off joint debts totaling $3,837,141. Thus, $2,212,560 remained to be split between the parties. Pursuant to the settlement agreement, Former Wife received $1,256,640 and Former Husband received $955,920. If the distribution of assets had been evenly divided, Former Husband would have received $150,360 more. Thus, Accountant concluded that Former Husband owed Former Wife $1,990,290 less the $150,360 extra she received under the settlement agreement, for a total of $1,839,930.
At the close of the Firm's case, the Firm renewed its directed verdict motion on Former Wife's negligence claim. Specifically, *328 the Firm argued that there was no evidence establishing proximate cause because there was no evidence presented that a judge would have awarded Former Wife more than what she received from the settlement agreement. The trial court expressed its concern that there was no evidence as to what a reasonable judge would have awarded Former Wife if a dissolution proceeding had taken place. However, the trial court reserved ruling on this motion until the jury returned its verdict. The trial court also denied Former Wife's motion for directed verdict on the issue of comparative negligence.
The jury returned a verdict, finding that the Firm was negligent and that its negligence was responsible for 75 percent of Former Wife's damages. The jury also found that Former Wife was comparatively negligent and that her comparative negligence was responsible for 25 percent of her damages. The jury determined that Former Wife's damages totaled $960,000. Thereafter, the Firm filed a motion for judgment notwithstanding the verdict. In addition, Former Wife filed a motion for entry of judgment in accordance with her motion for directed verdict on the issue of comparative negligence. After a hearing on these motions, the trial court granted the Firm's motion, finding that "there was no evidence (or reasonable inference therefrom) presented as to the issue of proximate causation upon which a jury could lawfully have returned its verdict because no expert testimony was presented that, but for the negligence of the attorney involved, a more favorable result would have been achieved for the Plaintiff [Former Wife] in the underlying cause of action." The trial court denied Former Wife's motion. Subsequently, the trial court entered final judgment in favor of the Firm.
In her first point on appeal, Former Wife argues that the trial court erred in directing a verdict in favor of the Firm because expert testimony was not required to prove proximate cause in a legal malpractice action. The Firm counters that insufficient evidence was presented on the issue of proximate cause and that the trial court properly directed a verdict in its favor.
In Florida, to prevail on a legal malpractice claim, the plaintiff must prove the following three elements: (1) the attorney's employment; (2) the attorney's neglect of a reasonable duty; and (3) the attorney's negligence resulted in and was the proximate cause of loss to the client. See Anderson v. Steven R. Andrews, P.A., 692 So.2d 237, 240 (Fla. 1st DCA 1997); Bolves v. Hullinger, 629 So.2d 198, 200 (Fla. 5th DCA 1993); Weiner v. Moreno, 271 So.2d 217, 219 (Fla. 3d DCA 1973). "The third element regarding the loss to the client is not satisfied unless the plaintiff demonstrates that there is an amount of damages which the client would have recovered but for the attorney's negligence." Sure Snap Corp. v. Baena, 705 So.2d 46 (Fla. 3d DCA 1997); see Fernandes v. Barrs, 641 So.2d 1371, 1375 (Fla. 1st DCA 1994); Bolves, 629 So.2d at 200. This requirement has resulted in a legal malpractice action being referred to as a "trial within a trial." Silvestrone v. Edell, 701 So.2d 90, 92 (Fla. 5th DCA 1997)(Sharp, J., dissenting); see Michael Kovach, P.A. v. Pearce, 427 So.2d 1128, 1129 (Fla. 5th DCA 1983). To prevail on the malpractice claim, the client has to prove that she would have prevailed on the underlying action but for the attorney's negligence.
In the instant case, there is no dispute that the first two elements have been satisfied. Thus, this appeal focuses on whether Former Wife presented sufficient evidence to satisfy the third element. In essence, Former Wife is asserting that her Accountant's testimony, coupled with her Expert's testimony, provided sufficient evidence with which the jury could have concluded that but for the Firm's negligence, she would have received a greater amount than she received under the settlement agreement. The Firm's position is that Former Wife failed to satisfy the third element because her Expert failed to provide a specific opinion as to whether she would have received a larger amount if her dissolution proceeding went to trial, than the amount she received under the settlement agreement.
"In negligence actions Florida courts follow the more likely than not standard of causation and require proof that the negligence *329 probably caused the plaintiff's injury." Gooding v. Univ. Hosp. Bldg., Inc., 445 So.2d 1015, 1018 (Fla.1984). Further, the Gooding court noted:
On the issue of the fact of causation, as on other issues essential to his cause of action for negligence, the plaintiff, in general, has the burden of proof. He must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.
Id. (quoting Prosser, Law of Torts § 41 (4th ed.1971) (footnotes omitted)). In Gooding, a medical malpractice case, the plaintiff's expert testified that the inaction of the hospital staff violated acceptable medical standards, but failed to testify that in the absence of such inaction, the patient's chances of survival would have been more likely than not. Id. at 1017. The supreme court upheld the trial court's directed verdict in favor of the hospital because the plaintiff failed to prove causation. Id. at 1018. It found that the expert testimony was insufficient to establish probable cause because such testimony established at most an equal chance for the patient's survival. Id.
Former Wife acknowledges Gooding, but asserts that a legal malpractice case differs from a medical malpractice case. She claims that in a medical malpractice case, the average juror would be unable to determine whether the alleged negligence caused the death of the patient without the aid of expert medical testimony. In this legal malpractice action, however, she argues that the jury, as fact finder, is presented with all the facts of the underlying dissolution case and asked to apply those facts to the law to determine what the result would have been if the action had gone to trial. If this factual determination by the jury establishes an amount greater than the amount received by the client, then the proximate cause element of the legal malpractice action has been satisfied. In essence, she claims that it is not necessary for an expert to specifically testify that the client had a "more likely than not" chance of obtaining a better result but for the attorney's malpractice where the jury could conclude from the evidence presented that the client would have obtained a better result if she had proceeded to trial.
The Firm counters that it was necessary for Expert to testify that it was more likely than not Former Wife would have obtained a better result but for the Firm's negligence because the underlying divorce action was a matter outside the competence of the common lay jury. Both parties turn to cases from other jurisdictions to support their views. We find Helmbrecht v. St. Paul Ins. Co., 122 Wis.2d 94, 362 N.W.2d 118 (1984) to be the most persuasive.
In Helmbrecht, a client brought a malpractice action against her former attorney who had represented her in a divorce action. Helmbrecht, 362 N.W.2d at 121. To prove the element of proximate causation, she had to establish that the divorce award she actually received was less than what a reasonable judge who was aware of all the facts would have awarded in the divorce action. Id. at 131. The Wisconsin Supreme Court found that the jury should substitute its judgment for that of the fact finder of the initial dissolution action in determining the proximate cause issue. Id. at 135. From the evidence presented, it was the jury's duty to determine what the outcome of the dissolution proceeding would have been without the attorney's negligence. Id. at 131, 135. The supreme court noted that the Legislature had codified the various factors to be weighed and balanced by a judge in a dissolution action and concluded that a jury that was properly instructed on the law could reasonably apply the law to the particular facts involved and resolve the issue of what a reasonable judge would have awarded in the underlying dissolution action. Id. at 136-37 (finding that "the question of what a reasonable judge would have awarded as property division and maintenance is no more complicated than other issues decided by juries every day all across this nation").
*330 The Firm argues that expert testimony stating that a reasonable judge would have awarded more than she received under the settlement agreement was necessary because a dissolution proceeding was a matter outside the competence of the common lay jury. The Firm's strongest case in support of this contention is Meyer v. Mulligan, 889 P.2d 509 (Wy.1995). However, Meyer is distinguishable from the instant case. In Meyer, a client brought a legal malpractice claim against his attorney for failing to properly draft legal documents. See Meyer, 889 P.2d at 513. The Wyoming Supreme Court determined that expert testimony was required to prove proximate causation under the facts presented because the question of whether the attorney could have drafted the documents differently to have avoided the subsequent damaging effects was not a question that lay people could competently determine. Id. at 516. Unlike Meyer, the instant case involves the jury simply applying the facts to the various rules that the Florida Legislature has set out in chapter 61, Florida Statutes (1997), regarding the dissolution of marriage and the distribution of marital assets. As such, we believe that the lay jury was competent to determine that Former Wife would have been awarded more but for the Firm's negligence. See Helmbrecht, 362 N.W.2d at 136-37.
In the instant case, the testimony of Former Wife's Expert and Accountant was sufficient to support the jury's finding that Former Wife would have received a greater amount if she had not entered into the settlement agreement. Expert testified that the promissory notes would have been admissible in the dissolution case, that there was enough evidence for a court to find that the couple had a deal regarding the payment of expenses, and that their deal would be enforceable unless it was against public policy. Further, Expert testified that the Firm's breach of the standard of care was the cause of damages to Former Wife. The Accountant testified that upon reviewing the promissory notes, bank accounts, and other financial data, he determined that Former Husband owed Former Wife more money than was reflected in the promissory notes. This evidence was sufficient to support the jury's finding that Former Wife would have recovered a greater sum if she had gone to trial.
Under the "trial within a trial" standard of proving proximate cause, the jury necessarily has to determine whether the client would have prevailed in the underlying action, in this case the dissolution action, before determining whether the client would prevail in the malpractice action. Because the jury is substituting its judgment for the fact finder of the dissolution proceeding, no expert testimony specifically stating that a reasonable judge would have given her more than she received in the settlement agreement would be required to establish proximate causation. To establish proximate causation, Former Wife must demonstrate that there is an amount of damages which she would have recovered but for the Firm's negligence. See Barrs, 641 So.2d at 1375; Bolves, 629 So.2d at 200. From the evidence noted above, the jury, sitting as the trier of fact in the dissolution action, determined the amount Former Wife would have been awarded if she went to trial and concluded that the amount was greater than she received under the settlement agreement. Thus, Former Wife has established the proximate cause element.
In sum, we conclude that the trial court erred in ruling that Former Wife failed to satisfy the proximate cause element because she did not present expert testimony specifically stating that she would have obtained a more favorable result but for the Firm's negligence. Thus, the trial court erred in overriding the jury's verdict. Accordingly, we reverse the final judgment and remand the case to the trial court for the reinstatement of the jury's verdict.
In her second point on appeal, Former Wife asserts that the trial court erred in denying her motion for directed verdict on the issue of comparative negligence. In denying Former Wife's motion, the trial court determined that the jury could find that Former Wife was a sophisticated businessperson who could have easily read the plain language of the settlement agreement and seen that she was giving up her right to pursue any other claim against Former Husband, *331 despite the fact that the Firm told her that she would still be able to bring such a claim.
A client cannot be found to be comparatively negligent for relying on an attorney's erroneous legal advice or for failing to correct errors of the attorney which involve the exercise of professional expertise. See Becker v. Port Dock Four, Inc., 90 Or.App. 384, 752 P.2d 1235, 1239 (1988); Theobald v. Byers, 193 Cal.App.2d 147, 13 Cal.Rptr. 864, 866-67 (1961). Here, Former Wife relied on the Firm's representation that she could still bring her claims on the promissory notes even if she signed the settlement agreement. Simply because she was somewhat sophisticated in business matters does not impose upon her the burden to second guess her attorney's advice or to hire a second attorney to see if such advice was proper. The reason the Firm was hired was for their legal expertise and superior knowledge of the legal implications that the signing of the marital settlement agreement would entail. Thus, we find that the trial court erred in failing to direct a verdict in favor of Former Wife on the issue of comparative negligence. See Becker, 752 P.2d at 1239; Theobald, 13 Cal. Rptr. at 866-67. Accordingly, upon remand, we instruct the trial court to strike that portion of the jury's verdict finding that Former Wife was 25 percent comparatively negligent.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
GUNTHER and SHAHOOD, JJ., concur.
GROSS, J., concurs specially with opinion.
GROSS, Judge, concurring.
I write separately to emphasize several points. This case does not concern the necessity of an expert to establish the breach of the appropriate standard of care, where that issue is contested in a legal malpractice action. This case did concern litigation malpractice, for which the "trial within a trial" approach was proper. I agree that an expert was not necessary in this case to establish causation. Whether expert testimony was permissible on this issue in a family law litigation malpractice case is within the trial court's discretion under § 90.702, Florida Statutes (1997).
Reference to the transcript of the trial demonstrates some confusion as to the appropriate causation standard. The trial court charged the jury pursuant to § 61.075, Florida Statutes (1995), regarding equitable distribution of marital assets. As was the case with the Wisconsin statute in Helmbrecht v. St. Paul Ins. Co., 122 Wis.2d 94, 362 N.W.2d 118, 137 (1984), § 61.075 has codified the various factors to be considered by a judge in making an equitable distribution. The existence of a valid contract between a husband and wife is the type of factor a judge could take into consideration under § 61.075(1)(j) as being "necessary to do equity and justice between the parties." The jury was required to determine what a reasonable judge would have awarded in the underlying dissolution, had it had the proof of the marital contracts before it. The equitable distribution statute requires the application of common sense and fairness, qualities which the jurors brought to the courtroom and which they were capable of applying without the assistance of an expert in this case.