WELLS, Chief Judge.
Alden Hanson appeals from a final summary judgment in favor of his former lawyer and his law firm in this legal malpractice action. Because we agree that no basis exists to support his claim, we affirm the final judgment in their favor.[1]

a. The parties’ claims in federal court:

This action has its genesis in a federal lawsuit brought by Captain Mark Rose for imposition of a maritime lien against a vessel owned by Hanson, for foreclosure of that lien, and for damages against Hanson for fraud and unjust enrichment. According to Rose’s complaint, Hanson promised Rose that if Rose served as captain of a vessel owned by Hanson, and made specified repairs to the vessel, Hanson would convey a controlling interest in the vessel to Rose. Rose further claimed that although he had served as captain and performed repairs to that vessel as agreed, Hanson had refused to reimburse him for the expenditures Rose had made in repairing the vessel and had disavowed his promise to convey a controlling interest in the vessel to Rose. Rose therefore sought an award of damages from Hanson for fraud and unjust enrichment and to impose a maritime lien against the vessel and to foreclose it:
21. The services, materials and repairs pi'ovided to the Vessel by Rose and through his direction give rise to a maritime lien against the Vessel pursuant to 46 U.S.C. s. 31342(a)(l)(1989).
22. Rose is entitled to foreclose that lien for non-payment.
Wherefore, Plaintiff asks this court to issue process in due form of law ... in causes of maritime and admiralty jurisdiction against the [vessel], her engines, tackle, appurtenances, etc., ... and that this Court order and adjudge that the Vessel be condemned and sold- to pay Plaintiffs demand....
Although the parties negotiated six separate agreements, and actually signed five, *1129 Rose did not allege a breach of any of these contracts.[2]
Hanson answered the complaint, denying Rose’s allegations and raising sixteen affirmative defenses including a waiver and a set-off defense. More particularly, Hanson claimed that Rose had contractually waived his right to a lien against the vessel and that he (Hanson) was contractually entitled to a set-off against all amounts claimed by virtue of Rose’s breach of the parties’ agreements:
36. The Second Amended.Complaint fails to state a claim upon which relief may be granted and that [Rose] waived his right to a maritime lien against the vessel. By [sic] the execution of various contracts, releases or other documents in which he confirmed that he had no claim against the vessel.
44. The Claimant/Owner [Hanson] is entitled to a set-off for all amounts due and owing to him from [Rose] []as a result of [Rose’s] ... breach of contract. ...
Hanson also filed counterclaims seeking damages for, among other things, Rose’s purported breach of the parties’ Purchase and Sale and Bareboat Charter Agreements. Rose answered, but did not claim by way of affirmative defense or otherwise that Hanson had breached any of the parties’ contracts.

b. Resolution by the United States District Court:

In December 1997, following trial in the United States District Court for the Southern District of Florida, final judgment was entered. That judgment dismissed all claims raised by both parties with the exception of a portion of Count I of Rose’s claim for a maritime lien.

1. Hanson’s breach of contract counterclaims:

In entering this judgment, the District Court first addressed Hanson’s counterclaims for breach of contract. In doing so, the court considered not only the breach of contract claims against Rose actually alleged by Hanson, but also a defense not raised in the pleadings by Rose — that Rose could not be liable for breach because Hanson breached first by improperly removing him as captain of the vessel:
In Count I of his counterclaim, Hanson has alleged that Rose breached the June 1992 Purchase & Sales Agreement.
Rose has argued that he is not liable for any breach of the June 1992 Purchase & Sales Agreement because Hanson breached this agreement by removing Rose from the [vessel] during the Provincetown Whale Watch Venture.
Hanson has responded to this argument by pointing out that he had the right to remove Rose from the [vessel] by a majority vote pursuant to paragraph 10 of the Provincetown Joint Venture Agreement.
(Emphasis added).
Reading all three contracts executed by the parties on June 3, 1992 together,[3] the *1130 District Court concluded that while the June 3, 1992 Provincetown Joint Venture Agreement allowed Hanson to remove Rose as captain of his vessel (with the agreement of one other partner in the venture), the June 3, 1992 Purchase and Sale Agreement allowed Rose’s removal only upon a determination of gross negligence. Because no gross negligence was either claimed or demonstrated, and because the Purchase and Sale Agreement stated that its terms governed over those of the other agreements executed that day, the District Court concluded that Hanson could not recover on his breach of contract counterclaims because it was he, not Rose, who had breached those contracts. Counts I and III of Hanson’s counterclaim for damages for breach of contract were therefore dismissed.

2. Rose’s claim for a maritime lien:

Having determined that Rose was not in breach of the parties’ agreements, the District Court next decided Rose’s entitlement to a maritime lien for wages and “necessaries.” While the court rejected Roses’ claim for wages, it decided that because Hanson had breached the June 3, 1992 Purchase and Sale Agreement (by wrongfully terminating Rose for reasons other than gross negligence), Rose was entitled to recover for “necessaries” under the June 3, 1992 Purchase and Sale Agreement.[4] This would, however, be subject to the provisions of paragraph 9 of that agreement, which expressly stated that in the event Hanson breached and the vessel was sold, Hanson would be entitled to the first $375,000 from its sale:
As mentioned above, the Court has found that Hanson breached the June 1992 Purchase & Sales Agreement. Under paragraph 9 of that agreement, Rose was entitled upon a default bg Hanson, to make a claim against the [vessel] for work and or repairs which Rose performed to improve the [vessel]. These payments were to be made to Rose from a sale of the [vessel] after Hanson received the first $375,000 from that sale.
(Emphasis added).[5]
The District Court next determined that Rose was not entitled to recover the full amount of the lien he might otherwise *1131 claim under paragraph 9 of the Purchase and Sale Agreement, first because Rose had contractually waived his lien rights prior to May 1993 when he executed the 1993 Arcadian Agreement, and second because under the Arcadian Agreement Rose was entitled to compensation only if profits were recognized and none were:
This claim would have been valid had Rose not subsequently executed the Arcadian Operating Agreement. Under paragraph 4 of that agreement, Rose explicitly waived all claims against the [vessel up to the date that agreement was executed] and Hanson. In addition, in paragraph 3(b) of the Arcadian Agreement Rose agreed that any payments for work performed on the [vessel] would be paid from the profits of the Arcadian Whale Watching Venture.... No payment is due under this paragraph because the Arcadian Whale Watching Venture did not produce any profit.... Having waived all other claims against the [vessel] and Hanson, Rose cannot succeed on Count I of his complaint as to any maritime lien that arose before May 16,1993.
Based on these findings, Rose was awarded a maritime lien in the amount of only $15,955.81 for expenditures made after May 16,1993.
Finding no merit in any of the other claims raised by the parties, they were dismissed,[6] and judgment was entered in the amount of only $15,955.81:
In light of the above, it is
ORDERED AND ADJUDGED as follows:
1. Counts I — III of the Verified Second Amended Complaint are hereby DISMISSED, except with respect to the portion of Count I that represents a lien for necessaries that arose on or after May 17,1993.
Pursuant to this lien, Rose is entitled to a judgment in the amount of $15,955.81.
2. Counts I — IV of the Counterclaim are DISMISSED.
Rose appealed and Hanson cross appealed from this judgment.
c. “Re”-resolution by the 11th Circuit Court of Appeals:
On appeal, the United States Court of Appeals for the Eleventh Circuit addressed three issues, which it stated as follows:
(1) whether the district court erred in finding that Rose waived his maritime liens that accrued prior to May 16, 1993 (“waiver issue”);
(2) whether Hanson is entitled to the first $375,000.00 from the sale of the [vessel] pursuant to the June 3, 1992 purchase agreement (“sale issue”); and
(3) whether the district court erred in awarding $15,955.81 for a maritime lien that arose after May 16,1993 (“damages issue”).
Rose v. M/V “Gulf Stream Falcon,” 186 F.3d 1345, 1348 (11th Cir.1999).
The Eleventh Circuit resolved only the first of these issues. With regard to that issue, the court concluded that the 1993 Arcadian Agreement did not waive Rose’s right to secure a lien for services predating that agreement as the District Court concluded. Rose, 186 F.3d at 1351 (“In sum, we see nothing in the language of [the Arcadian Agreement] which suggests that Rose waived his maritime lien on the [vessel]. Accordingly, we conclude that *1132 the district court erred in finding waiver.”). The Circuit Court refused to consider Rose’s second argument that Hanson was not entitled to the first $375,000 from the sale of the vessel, leaving that determination intact.[7] And, in light of its ruling on these first two issues, the Circuit Court saw no need to address the third issue on damages and remanded the matter to the District Court to recalculate the amount of the maritime lien due.

d. “Re-re” resolution by the United States District Court on remand:

On remand .the District Court did, in part, precisely what the Eleventh Circuit mandated. It recalculated the amount of the maritime lien absent consideration of any waiver on Rose’s part. It failed, however, to accord the $375,000 offset due to Hanson as adjudicated in the original judgment and left untouched by the appellate court.
This order was summarily affirmed on appeal.

e. Hanson’s claims here:

Following the final appeal in the federal courts, Hanson brought this action against the attoimey and the law firm that represented him in the federal action. As pertinent here, he claimed that they were negligent in failing to raise a set-off defense to Count I of Rose’s complaint for a maritime lien that would entitle him to the first $375,000 in proceeds from the sale of the vessel as provided by paragraph 9 of the June 3, 1992 Purchase and Sale Agreement. The parties ultimately agreed that this claim could be resolved as a matter of law on summary judgment upon resolution of three issues[8]:
1. Whether Hanson’s entitlement to the first $375,000 from the sale of the vessel was an affirmative defense;
2. Whether Hanson’s lawyer raised, argued, and/or pled Hanson’s entitlement to the first $375,000 from the sale of the vessel as an affirmative defense in the federal proceedings; and
3. Whether, assuming that the lawyer failed to raise, plead, and/or argue Hanson’s entitlement to the first $375,000, such failure was a good faith tactical decision protected by the doctrine of judicial immunity.
With regal'd to the first issue, the court below found that Hanson’s entitlement to the first $375,000 from the sale of the vessel was a valid affirmative defense to Rose’s claim of maritime lien under a federal statute, 46 U.S.C. § 31305, providing *1133 for subordination of lien rights. As to the second issue, the court below determined that while the lawyer had not specifically raised Hanson’s entitlement to such sum as an affirmative defense, there was “no doubt” that the issue of such entitlement was ultimately raised, argued, and actually determined in Hanson’s favor by the federal District Court. Therefore, as to the third issue, the court below found that when the Eleventh Circuit remanded the matter for recalculation of Rose’s maritime lien “no one could have expected that Judge Graham would in effect recede from his original ruling ... and not recalculate the maritime lien under the findings ... which said that Rose had a lien subject to Mr. Hanson receiving the first $375,000 from the sale.” And, based on the totality of the circumstances — including the claims and counterclaims actually pled, as well as the matters actually tried in the federal court — the court below found that Hanson’s lawyer and his firm were entitled to judgmental immunity under Crosby v. Jones, 705 So.2d 1356 (Fla.1998).
As an initial matter, we find that the doctrine of judgmental immunity has no application in this case. This doctrine applies in instances where the attorney makes “[gjood faith tactical decisions or decisions made on a fairly debatable point of law.” Id. at 1358. In the instant matter, Hanson lost in federal court on remand not because of any tactical decisions on his lawyer’s part, but because the District Court inexplicably refused to rely upon a prior ruling on an issue that had been raised by the parties, tried by consent at a bench trial, and left untouched by the appellate court. Thus, in this case, no tactical decision and therefore no judgmental immunity are involved. That being said, we nonetheless find that the lawyer and his firm are entitled to a judgment in their favor as a matter of law. See Dade Cnty. Sch. Bd. v. Radio Station WQBA, 731 So.2d 638 (Fla.1999) (finding that “if a trial court reaches the right result, but for the wrong reasons, it will be upheld if there is any basis which would support the judgment in the record”).[9]
As the court below in this case confirmed, examination of the record in the federal proceeding demonstrates that the issue of Hanson’s entitlement to the first $375,000 from the sale of the vessel under paragraph 9 of the June 3, 1992 Purchase and Sale Agreement was raised, argued, and actually ruled upon in Hanson’s favor by the District Court in its original order. The Eleventh Circuit left that ruling undisturbed, refusing to address it. On remand, the District Court should therefore have enforced its earlier ruling that, while “Rose was entitled ... to make a claim against the [vessel] for work and or repairs which Rose performed to improve the [vessel] ... [tjhese payments were to be made to Rose from a sale of the [vessel] after Hanson received the first $375,000 from that sale." (Emphasis added).[10] It did not.
*1134 On this record, we are constrained to agree with the assessment of the court below that no one could have anticipated what the District Court ultimately did. More to the point, it was the District Court’s declination on remand to apply its prior determination — which had become final after the Circuit Court left it intact and remanded only for recalculation of the lien amount — and not any failure or negligence on Hanson’s lawyers’ part that was the cause of Hanson’s loss. See Law Office of David J. Stern, P.A. v. Sec. Nat'l Serv. Corp., 969 So.2d 962, 966 (Fla.2007) (”A legal malpractice action has three elements: 1) the attorney’s employment; 2) the attorney’s neglect of a reasonable duty; and 8) the attorney’s negligence as the proximate cause of loss to the client.” (quoting Sec. Nat’l Serv. Corp. v. Law Office of David J. Stern, P.A., 916 So.2d 934, 936-37 (Fla. 4th DCA 2005))); see also Westbrook v. Zant, 743 F.2d 764, 768 (11th Cir.1984) (finding that the District Court erred by reexamining an issue that went beyond the limited scope of the Circuit Court’s instructions on remand). We are, therefore, unable to determine that “but for” these lawyers’ alleged negligent conduct, Hanson would have obtained some other favorable result in the federal proceeding. See KJB Vill. Prop., LLC v. Craig M. Dorne, P.A, 77 So.3d 727, 730 (Fla. 3d DCA 2011) (“If the client cannot show that it would not have suffered harm ‘but for’ the attorney’s negligence, the client will not prevail.”); Tarleton v. Arnstein & Lehr, 719 So.2d 325, 328 (Fla. 4th DCA 1998) (“To prevail on the malpractice claim, the client has to prove that she would have prevailed on the underlying action but for the attorney’s negligence.”). Under the circumstances, no legal malpractice was or could be demonstrated.
Accordingly, and because we find no merit in the issues raised in these consolidated appeals, we affirm the orders on appeal in all respects.
Affirmed.
SALTER, J., concurs.

. This appeal has been consolidated with the appeal of a final judgment on the law firm’s proposal for settlement, and with the appeal of a final judgment on the law firm's counterclaim.

. The six contracts identified in the first final judgment entered in the United States District Court are: (1) March 10, 1992 Purchase and Sale Agreement — unsigned; (2) June 3, 1992 Purchase and Sale Agreement — signed; (3) June 3, 1992 Provincetown Whale Watching Joint Venture Agreement — signed; (4) June 3, 1992 Bareboat Charter Agreement — signed; (5) August 21, 1992 Bareboat Charter Termination Agreement — signed; and (6) May 16, 1993 Arcadian Agreement — signed.

. In doing so, the court stated:
*1130 Initially, the Court finds that the three agreements dated June 3, 1992, must be read together as part of the single, overall Provincetown Whale Watching Joint Venture. The Court is convinced that these three agreements should be read together because (1) they were executed on the same day; (2) they are functionally intertwined; (3) they all dealt with the same transaction, i.e., The Provincetown Whale Watching Joint Venture; and (4) The June 1992 Purchase & Sales Agreement made direct reference to the Bareboat Charter and The Prov-incetown Whale Watching Joint Venture Agreement.

. According to the District Court's decision, "necessaries” includes costs for "repairs, supplies, towage, and the use of a dry dock or marine railway.”

. Paragraph 9 of the June 1992 Purchase and Sales Agreement provided:
In the event of default by Hanson, Rose shall have the right to assert a claim against the Vessel for any work and/or repairs which Rose has performed to improve the vessel. Payment of said claims shall be made from the sale of the Vessel, such sale to occur as soon as possible after default, with Hanson guaranteed the first Three Hundred Seventy-Five Thousand Dollars ($375,000), and the balance above that amount applied toward Rose’s verified expenses incurred in modifying the vessel, excluding Mark Rose’s time. These expenses to be verified by receipts approved by Alden Hanson, which approval shall not be unreasonably withheld. Any amount remaining after payment to Hanson, and reimbursement to Rose, shall be divided equally between Hanson and Rose.

. This included Rose's claims for fraud (Count II) and unjust enrichment (Count III), and Hanson’s claims for conversion and wrongful arrest (Counts II and IV of the counterclaim).

. This decision was, as best we can discern, premised on three determinations. First, as the Circuit Court noted, Hanson’s breach of contract claims were not adjudicated, but were dismissed. Second, because the judgment below turned on the issue of waiver under the 1993 Arcadian Agreement and not on breach of the 1992 Purchase and Sale Agreement, the District Court had made no findings as to the parties' rights and obligations upon a breach:
Because the district court primarily based its ruling on the waiver issue, the district court did not make a finding as to whether Hanson was entitled to the sales proceeds. Further, we note that the district court dismissed Hanson’s counterclaim for breach of contract and never reached the issue of the parties’ rights under the June 3, 1992 purchase agreement. Accordingly, we need not address this argument.
Id. (footnote omitted).
Third, and most significantly, the Circuit Court expressly stated that it was refusing to address the issue because “Rose failed to raise it in the district court.” Id. (emphasis added).

. In the final summary judgment order, the trial court considered the second question before the first. We have reordered the issues in this opinion for sake of clarity.

. In their renewed motion for summary judgment, the lawyer and his firm extensively argued that the issue of Hanson’s entitlement to the first $375,000 upon sale of the vessel had been raised, argued and tried by consent before the District Court. See Agudo, Pineiro & Kates, P.A. v. Harbert Constr. Co., 476 So.2d 1311, 1315 n. 3 (Fla. 3d DCA 1985) (recognizing that the "right for the wrong reason” appellate maxim applies to summary judgment proceedings where the issue was raised in the motion for summary judgment); see also Heath v. Bear Island Homeowners Ass’n, Inc., 76 So.3d 39, 40 (Fla. 4th DCA 2011) (affirming summary judgment in favor of the appellee/defendant upon concluding that the trial court was correct "albeit for the wrong reasons,” citing Dade County School Board v. Radio Station WQBA, 731 So.2d 638 (Fla.1999)).

. Indeed, in the District Court’s original order, the court accepted Rose's evidence and *1134 argument that Hanson had breached the January 3, 1992 Purchase and Sale agreement by terminating Rose as captain of the vessel for reasons other than gross negligence. The court used Hanson's breach as the basis not only for dismissing Hanson’s counterclaims, but also, upon specific reference to paragraph 9 of the agreement, as the basis for determining that Rose had a valid lien claim for necessaries. But for the court's further determination (later reversed on appeal) that Rose had waived his claim of lien under the 1993 Arcadian Agreement, the court's finding as to paragraph 9 would have carried the day and the lien amount would have been calculated with respect to that finding.